622 So.2d 808 (1993)
STATE of Louisiana
v.
Steve GALES.
No. 92-KA-2702.
Court of Appeal of Louisiana, Fourth Circuit.
July 27, 1993.
*810 Harry F. Connick, Dist. Atty., Robyn C. Gulledge, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before KLEES, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.
STATEMENT OF THE CASE
The State filed two bills of information charging the defendant with three counts of attempted first degree robbery, violations of R.S. 14:27 and 14:64.1. After preliminary hearing and discovery motions were waived (the defendant was provided with a police report), trial was held and the defendant was convicted on all counts. The trial court denied the defendant's motion for judgment of acquittal. After waiving all delays, the defendant was sentenced on each count to thirteen years at hard labor without the benefit of probation, parole, or suspension of sentence, all counts to run concurrently. The defendant's motion to reconsider sentence was filed and denied; the motion to appeal was granted. On May 27, 1992 the State filed a multiple bill. On September 19, 1992 the hearing was held. After the defendant stipulated to identity, the trial court found him to be a second offender. The trial court vacated the original sentence as to count one only and resentenced the defendant to thirteen years at hard labor without the benefit of probation, parole, or suspension of sentence, to run concurrently with the sentences imposed on counts two and three.
FACTS
In the early morning hours on Mardi Gras, March 3, 1992, the victims, John Frazier, Lottie Lombard, and Mark Galladora, were sitting outside of a motor home which was parked on Carondelet Street. John Frazier and Mark Galladora were playing checkers while Lottie Lombard and a fourth person, also named Mark, played cards. The defendant walked past the group, looking back, then came back to their location and sat on a car. The defendant made a few sociable comments but none of the victims responded. The defendant then stated that he needed some money, $20.00, but added "I won't shoot anybody if you just give me the money". The defendant had his hands behind his back, causing the victims to believe he had a gun. John Frazier told the defendant that he had money inside the motor home which he could get for the defendant. After the defendant consented, John Frazier went inside and woke up his stepfather, Lt. Scott.
Lt. Richard Scott, a New Orleans police officer, was inside the motor home asleep when he was awakened by his stepson telling him that there was a guy outside demanding money or he would shoot. Lt. Scott armed himself and went outside where he saw the defendant, who said he needed money and that he wanted $20.00. He said that he did not wish to hurt anyone or shoot anyone. Because Lt. Scott did not see anything in the defendant's hand, he asked where defendant's weapon was, and the defendant again stated that he did not want to hurt anybody. At that time, Lt. Scott identified himself as a police officer and told the defendant to leave. The defendant replied that if Scott was a police officer he should arrest him. The defendant was then subdued by Lt. Scott while, at his stepfather's instruction, John Frazier called for police assistance. The defendant was arrested when other officers arrived at the scene.
The defendant testified on his own behalf at trial. He stated that at approximately 1:00 a.m. he was walking home from Bourbon Street down Carondelet Street. The defendant said that he went up to the people *811 at the table, i.e. the victims, and asked them for a dollar to catch the bus home. According to the defendant, he was intoxicated at the time. He denied having said anything about a gun. In the defendant's version, Ms. Lombard became angry and stated that if he had a gun he would have to shoot her before he would get any money. Frazier then offered to get the defendant a dollar from inside the motor home.
No other defense witnesses were presented at trial.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the appellant contends that he was denied the effective assistance of counsel. Appellant states three grounds for his contention: (1) Counsel withdrew his request for a preliminary hearing and all discovery motions and failed to consult with the defendant before the trial; (2) Counsel allowed Lt. Scott to testify to hearsay evidence, and failed to properly object to this testimony; and (3) Counsel failed to make an objection to an inadequate jury instruction given by the trial court.
The issue of ineffective assistance of counsel is generally addressed by an application for post conviction relief filed in the trial court which then conducts a full evidentiary hearing on the issue. State v. Prudholm, 446 So.2d 729 (La.1984). However, when the appeal record contains enough evidence upon which to base a ruling on the issue, the appellate court will make a determination in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983).
A claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is deficient when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686-88, 104 S.Ct. at 2064. Counsel's performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693-95, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
If an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363.
A review of the record in the instant matter shows that motions were set to be heard on May 1, 1992. On that date, defense counsel withdrew the motion for a preliminary hearing and all discovery motions. The entry also shows that the defense counsel "has received a copy of the police report." Apparently, once he received the police report, counsel was satisfied that he had received all the information from the State necessary to be apprised of the nature of the evidence against his client. The setting of the trial date for eighteen days later, on May 18, 1992, was not opposed by defense counsel.
The appellant contends that the police report identified only one victim and one witness to the crime. The appellant vaguely argues that counsel failed to have a line of defense and that he should have known all of the State's evidence against the defendant. However, the police report is not a part of the record and the appellant does not provide any details as to its contents. *812 The appellant also fails to state what theory of defense counsel should have had. Absent such allegations, the defendant fails to show prejudice under Strickland. Furthermore, the charges against the defendant, attempted first degree robbery, were not complex; there was no physical evidence seized from him; there were no out-of-court identifications involved; there were no inculpatory statements. Therefore, the record does not demonstrate that the defendant was prejudiced in any way by counsel's withdrawal of his motion for preliminary hearing and discovery motions.
The appellant additionally alleges that his attorney failed to confer with him. The appellate record does not indicate what time, if any, was spent by defense counsel in conference with his client. Therefore, this issue may be more appropriately considered on post conviction relief. However, the defendant again does not make any showing regarding what information he would have provided his attorney if there had been more time for conferences. Therefore, this allegation also does not meet the test of Strickland.
The appellant next contends that his counsel should have objected to the testimony of Lt. Scott. The testimony at issue was the statement made by John Frazier to Lt. Scott that someone was outside trying to rob them. Initially, counsel did object to any hearsay testimony; the objection was sustained. However, the next time the prosecutor attempted to elicit what Frazier said to Lt. Scott, counsel stated "I don't mind that," and the trial court noted that such testimony would be admissible as res gestae. Even assuming such testimony was not res gestae and not an exception to the hearsay rule, the appellant cannot demonstrate prejudice because John Frazier testified at trial to his statement to his stepfather. Because Frazier was the declarant testifying at trial, his testimony was not hearsay and was clearly admissible. La.Code of Evidence Art. 801. Again, the defendant has failed to show prejudice as required by Strickland.
The appellant's final allegation of ineffective counsel is that his counsel failed to object to the additional jury instruction and example which the trial court gave on the law of attempt. In his second assignment of error the appellant argues that the example was improper. Because the defendant would not be prejudiced by counsel's failure to object if the example was not reversible error, this issue will be considered with the discussion on the second assignment of error.
ASSIGNMENT OF ERROR NUMBER 2
The appellant contends that the trial court's further instruction on attempt was inappropriate and misleading in this case. The instruction given by the court was to imagine that he (the judge) intended to kill the court reporter, that he picked up a gun, put bullets in it, pointed it at her, and pulled the trigger, but the bullets failed to discharge from the weapon for some reason. The appellant contends that this example was inappropriate because it was too graphic and because it describes a homicide and not a first degree robbery, the charge against the defendant. In addition, the appellant argues that the court's example involved the use of a weapon, whereas the defendant's crime did not include the use of a weapon.
La.C.Cr.P. art. 806 provides:
The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
Considering Article 806, the trial court did not clearly err by providing an example which differed markedly from the crime with which the defendant was charged. Furthermore, there was overwhelming evidence, in the form of the three victims' testimony, that the defendant had the specific intent to rob them and that the defendant committed specific acts intending to lead the victims to believe that he was armed with a dangerous weapon. Therefore, *813 the defendant was not prejudiced by the jury instruction.
Because the jury instruction does not constitute reversible error, defense counsel's failure to object does not constitute ineffective assistance under Strickland, supra.
ASSIGNMENT OF ERROR NUMBER 3
In the appellant's third assignment of error, he contends that the jury verdicts were against the weight of the evidence. The appellant specifically argues that the evidence reasonably permitted a finding of guilty only as to one of the three victims.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). In addition, when circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven so that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. La.R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The elements of first degree robbery are set forth in La.R.S. 14:64.1 which provides in pertinent part:
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
The defendant was charged with attempt, a violation of R.S. 14:27, which provides in part:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
As noted above, the victims of the crime all testified that the defendant led them to believe that he was armed with a dangerous weapon by keeping his hands behind his back and stating that he would not shoot anyone if he got money. Such actions have been held to be sufficient. See for example State v. Hill, 475 So.2d 1123 (La.App. 4th Cir.1985), writ denied 478 So.2d 904 (La.1985), in which the defendant lunged at the victim, knocking him off his bike, and told him to "Give it up". He then "placed one hand inside his own pants to create an opening, reached in the opening with the other hand and said `That's your ass'". Id. at 1124. The victim, believing that the defendant was going to pull out a gun and shoot him, threw his wallet down. At no time did the victim actually see a weapon, nor was a weapon recovered from the defendant. This court found that this evidence was sufficient to convict the defendant of first degree robbery.
The real question in this case is whether the defendant attempted a first degree robbery as to each of the victims. The defendant suggests that the evidence demonstrates that he was speaking only to John Frazier. However, Ms. Lombard confronted the defendant, stating that she could not believe he was "doing this to someone of your own race" and Ms. Lombard also told the defendant that he would have to shoot her before he got anything from her. This testimony, taken in the light most favorable to the State, establishes beyond a reasonable doubt that the defendant was attempting *814 to rob Ms. Lombard as well as John Frazier. Furthermore, the third victim, Mark Galladora, testified that the defendant asked all of the people at the table for $20.00 and generally threatened to shoot somebody if he did not get it. The defendant's actions led Mr. Galladora to believe that the defendant was armed with a dangerous weapon and would shoot one of them if he did not get the money. Considering this testimony, a reasonable trier of fact could conclude that the defendant was attempting to rob Mark Galladora as well as John Frazier and Lottie Lombard. The appellant's third assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER 4
In the appellant's fourth assignment of error, he contends that the sentences of thirteen years on each count are excessive and not in accordance with applicable sentencing guidelines.
The defendant was originally sentenced on May 26, 1992, after the effective date of the Louisiana Sentencing Guidelines. However, the trial court made no mention of the guidelines when it sentenced the defendant. Instead the court referred to the aggravating and mitigating factors found in C.Cr.P. art. 894.1 prior to the enactment of the guidelines. The defense filed a motion to reconsider sentence pursuant to C.Cr.P. art. 881.1, which the trial court denied.
At sentencing, the trial court referred to the defendant's prior convictions for possession of cocaine and forgery as factors in the sentences imposed. This criminal history makes the defendant a Class B offender under § 402E of the sentencing guidelines. The offense for which the defendant was convicted, attempted first degree robbery, falls within Grid 3. Therefore, the appropriate sentencing range of incarceration for this defendant, absent aggravating or mitigating circumstances, is 84 to 108 months (seven to nine years). The defendant received actual sentences of thirteen years, or 156 months.
The defendant was adjudicated a second offender.[1] The minimum sentence which he could receive was ten years. Section 211 of the Louisiana Sentencing Guidelines provides that if the mandatory minimum sentence exceeds the maximum sentence in the designated sentencing range, the court should impose the minimum sentence required by law unless aggravating circumstances justify a greater sentence.
In State v. Smith, 610 So.2d 152 (La. App. 4th Cir.1992), the Court held that a judge may depart from the suggested range set by the guidelines, but he must "justify such departure by explaining why the case at hand is not typical." State v. Smith at 154.[2] The Court further stated:
He must determine whether the significant presence of aggravating or mitigating circumstances make[s] the present case more or less serious than the typical case arising under the offense. Louisiana Sentencing Guidelines § 209(B), (C).
Therefore, the trial court in this case was required to state its reasons for deviating from the minimum sentence under R.S. 15:529.1.
As noted above, the trial court at sentencing made no reference to the new Louisiana Sentencing Guidelines. The court merely stated that, under C.Cr.P. art. 894.1 paragraphs A and B (which had been completely amended at the time of the defendant's sentencing), the court felt that, if the defendant were to receive a suspended sentence, there was undue risk that he would commit another crime. Therefore the defendant was in need of correctional treatment that could most effectively be provided by commitment to an institution. These comments were irrelevant because, as the trial court also noted, the defendant was not eligible to receive a suspended *815 sentence under R.S. 14:64.1. Finally, the trial court stated that a lesser sentence than the one imposed would deprecate the seriousness of the particular charge.
In imposing sentence, the trial court failed to comply with the requirements of the Louisiana Sentencing Guidelines and State v. Smith, supra. The nature of the offenses and the defendant's prior criminal history are to be taken into account in determining where the defendant falls in the sentencing grid. Without additional aggravating circumstances, deviation from the grid is subject to reversal, if that deviation is "gross". State v. Smith.
Furthermore, the Second Circuit recently held in State v. Tracey, 612 So.2d 984, 986 (La.App. 2nd Cir.1993) that a court "is mandated to consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission when determining the appropriate sentence to be imposed. LSA-C.Cr.P. art. 894.1 A." In Tracey, the record showed that the trial court had never mentioned the sentencing guidelines although it had mentioned the defendant's criminal record. On reversing and remanding for resentencing, the Second Circuit stated that "[since] the trial court did not consider the Felony Sentencing Guidelines, as mandated by LSA-C.Cr.P. art. 894.1 A, we are required to reverse and vacate the defendant's sentences." Id.[3]
In a letter to his client and in the brief filed into the record, the appellant's counsel indicated that he had decided against assigning the excessive sentence as error. Counsel's reasoning was that the deviation from the guidelines in this case was minimal compared to the deviation in Smith.[4] In Smith, the defendant received fifteen years; the sentencing range was four and one-half years to five and one-half years. In the instant case, the sentencing range is seven to nine years; the defendant received thirteen. In both cases, the minimum the defendant could receive under his multiple offender sentence was ten years. In Smith this Court vacated the defendant's sentence and ordered imposition of the minimum ten year sentence under the multiple bill.
In the instant case, one circumstance that is different from Smith is that the defendant was subject to the ten year minimum on only one count. The minimum sentence required on the counts for which the defendant was sentenced as a first offender was one and one-half years. The range of sentences provided by the sentencing guidelines for this defendant, seven to nine years, is substantially more than the minimum sentence required by law and should theoretically take into account the defendant's criminal history without regard to an adjudication as a multiple offender. Nevertheless, the trial court imposed thirteen year sentences on all counts prior to the multiple offender adjudication. Furthermore, as in State v. Tracey supra, the trial court never mentioned the Louisiana Sentencing Guidelines.
The appellant's pro se assignment that his sentences are excessive and outside the applicable sentencing guidelines merits serious consideration. For this reason the trial court is ordered to resentence the defendant in accordance with the Louisiana Sentencing Guidelines. If the trial court believes that the sentences previously imposed should be imposed, it is required that *816 the court enumerate the aggravating factors it is applying.
ASSIGNMENT OF ERROR NUMBER 5
In his fifth and final assignment of error, the appellant contends that the grand jury was in error in its indictment because it indicted him on three counts. The appellant argues that the police report did not list Lottie Lombard as a victim; however, she was so named in the indictment and was allowed to testify at trial.
The assignment lacks merit. First, the defendant was not indicted by a grand jury but by bills of information signed by the district attorney's assistant. Second, C.Cr.P. art. 61 states that the district attorney has charge and control of prosecutions and "determines whom, when, and how he shall prosecute." Because the crimes with which the defendant was charged were not punishable by life imprisonment, no grand jury indictment was required. C.Cr.P. art. 381, and the district attorney had complete authority to file whatever number of counts he felt appropriate. Finally the defendant was convicted on all counts. The evidence was sufficient. Therefore, the district attorney correctly charged the defendant.
ERRORS PATENT
A review of the record reveals one defect. At the multiple bill hearing, the defendant admitted his identity as the person previously convicted in case number 351-904 but objected to the sufficiency of the State's evidence as it pertained to the voluntariness of the guilty plea in that case. The minute entry of the multiple bill hearing does not include the defendant's objection to sufficiency. However, copies of the State's exhibits from the multiple bill hearing are in the record. The evidence of the defendant's waiver of his Boykin rights consists of a waiver of rights form and a preprinted fill-in-the-blanks minute entry. In State v. Blunt, 464 So.2d 869 (La.App. 4th Cir.1985), this Court held that such a preprinted fill-in-the-blanks form, purporting to be a minute entry, could not be considered a contemporaneous record of a guilty plea. The Court further noted that
"[A] guilty-plea, rights-waiver form executed by defendant, although complete in every detail, is insufficient without minutes or transcript of a colloquy between judge and defendant showing the knowing and voluntary waiver required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)."
Blunt at 871.
See also State v. Cargo, 609 So.2d 905 (La.App. 4th Cir.1992).
The multiple offender adjudication of the defendant is hereby vacated and the multiple offender determination is remanded for a new hearing.
In this case, counsel of record filed an errors patent brief along with a request to withdraw as counsel of record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. As discussed supra, there is error as to the sufficiency of the State's evidence at the multiple offender hearing as well as the trial court's omission to consider the sentencing guidelines. Because of these errors patent, counsel's request to withdraw is denied and he is ordered to stay on the case.
CONCLUSION
The convictions herein are affirmed. The matter is remanded for resentencing and the multiple offender adjudication is vacated.
CONVICTION AFFIRMED. REMANDED FOR RESENTENCING. MULTIPLE OFFENDER SENTENCE VACATED.
KLEES, J., concurs.
KLEES, Judge, concurring.
The majority incorrectly states that the trial court failed to comply with the requirements of State v. Smith, 610 So.2d 152 (La.App. 4th Cir.1992). Smith was handed down on December 1, 1992 approximately two and a half months after this defendant was sentenced. What Smith did do was determine that the appellate courts *817 were vested with the authority and obligation to review sentences for comparison with the guidelines and determine whether the record supports a significant deviation. Since the record in this matter shows that the sentencing guidelines were not considered by the trial court, I agree with the majority and remand for resentencing.
NOTES
[1] The multiple bill listed both prior felony convictions. The earlier conviction resulted in a guilty plea in February 1986. The defendant's second conviction was for possession of cocaine and occurred on November 14, 1991. It is possible the State did not pursue the triple bill because more than five years elapsed between the 1986 and 1991 convictions.
[2] The State has applied for writs to the Supreme Court.
[3] The Second Circuit, in accordance with its policy, noted that the trial court on resentencing should advise the defendant that she had three years from the date her conviction and sentence are final to file an application for post-conviction relief under C.Cr.P. art. 930.8. At present this Court does not instruct trial courts to give defendants this information, although Article 930.8 contains mandatory language that the courts should.
[4] In his letter, counsel also mentions several facts which he felt may be considered as aggravating. However, counsel is incorrect on this issue. The guidelines clearly state that facts which constitute elements of the offense or other offenses for which the defendant has been convicted cannot be used as aggravating factors. § 209(B). Both of the facts mentioned by counsel, threats and multiple victims fall within these categories. Also, counsel mentions that the trial court could have imposed consecutive sentences. However, § 215(A)(2) specifically provides that if two or more criminal acts are based on the same transaction, concurrent sentences should be imposed.