BYRNES, Judge.
James Charles appeals his convictions and sentences for two counts of forcible rape in violation of LSA-R.S. 14:42.1, and one count of attempted forcible rape in violation of LSA-R.S. 14:27/42.1. After he was found guilty as charged by a jury on September 28, 1992, he was sentenced on October 6,1990 to serve forty years on each of the forcible rape convictions (with the first two years of each sentence to be served without benefit of parole, probation and suspension of sentence), and twenty years for attempted forcible rape. After the defendant was found to be a multiple offender on January 27, 1993, the court vacated one count of the forcible rape conviction and sentenced the defendant to serve forty years under LSA-R.S. 15:529.1. All sentences are to run consecutively. We affirm.
At trial the thirteen-year-old victim, “B.W.”, testified that the defendant, who was her mother’s boyfriend, first raped her when she was eleven years old in November 1990. She described the initial incident where the defendant asked her to go into the bedroom to get his shirt; he walked in behind her, closed and locked the door. He took off her clothes, got on top of her and “stuck his penis in my vagina.” He told her not to tell anyone but she told her “Auntie”, who was drunk and “it was just like I wasn’t telling nobody.” In January 1991, the girl was asleep on the floor of her mother’s bedroom when the defendant began fondling her. She began “pushing him and scratching him,” saying “leave me alone.” On that occasion, she ran from the house and told a friend what had happened. She did not tell her mother because she “was seared she [her mother] wasn’t going to believe me.” On the third occasion, the child was in her room when she heard her mother leaving for work about 5:30 a.m. Shortly thereafter while she was in bed, the defendant entered her room, sat on her bed, and took her clothes off. She said that she did not try to stop him because she was scared. She related that, “he stuck his penis in my vagina” and said “he didn’t want my mamma, he wanted me.” She called a friend who told her to call the police.
New Orleans Police Officer Donald Berry-hill, Sr. testified that he responded to a call from Shirley Drive about 6 a.m. on April 2, 1992. When he arrived, he saw B.W. (the victim) leaning from a bedroom window. She told him she was barricaded in her bedroom and that her stepfather had just raped her. The officer persuaded B.W. to open the door, *406 and when he entered, he found the defendant in another bedroom ironing his clothes.
Detective Edward Gai of the Child Abuse Section testified that he interviewed B.W. and took her to Charity Hospital.
Dr. Karen Cocheran, a resident at Charity Hospital, examined B.W. on April 2,1992 and found abrasions around her peritoneum. Such abrasions occur as a result of rough intercourse, lack of lubrication, or other trauma. Dr. Cocheran said she had never seen such an abrasion other than after a sexual assault.
James Charles testified that he was a frequent guest at the victim’s mother’s home beginning in 1989. At that time the victim was living with her grandmother, but after the grandmother’s death in November 1989, the child moved into the house with her mother and younger brother. He admitted having sex several times with the child, but he said that she always consented. Charles acknowledged that he had been released from a six-month jail term for theft on March 31, 1992. Charles has convictions for simple robbery and unauthorized use of a moveable.
The defendant argues that the trial court erred in imposing excessive and consecutive sentences. Under LSA-R.S. 15:529.1 and LSA-R.S. 14:42.1 the sentencing range is twenty to eighty years; under LSA-R.S. 14:42.1 forty years is the maximum term and under LSA-R.S. 14:27/42.1, twenty years is the maximum. The defendant received one-half the maximum on the multiple offender conviction and two maximum sentences on the other two convictions. The defendant argues that the trial court failed to follow the Louisiana sentencing guidelines.
The State contends that although the defendant filed a motion to reconsider his sentence after the original sentence, he failed to file another motion to reconsider his multiple bill sentence, precluding an objection on appeal. LSA-C.Cr.P. art. 881.1(D). However, filing a motion to reconsider the original sentence preserves the question of excessiveness on appeal. State v. Krogh, 620 So.2d 1324 (La.1993).
The defendant notes that under the sentencing guidelines the appellant’s criminal history makes him a Class B or Class C felon. If the prior theft conviction involved more than $500, he is Class B; if less than $500 but more than $100, he is Class C. If a Class B felon is convicted of forcible rape, the sentence range is between 300-270 months (25-22½ years); a Class C felon convicted of forcible rape would merit between 240-210 months (20-17½ years). On the attempted forcible rape conviction, the Class B felon range is between 180-150 (15-12½ years); the Class A felon between 126-96 months (10½-8 years).
Under guideline § 215 A, the court may impose consecutive sentences but must state the factors considered and the reasons for the sentence. In § 215 C, the two step procedure for imposing consecutive sentences is delineated. First the court must determine the “base sentence range:”
1. The base sentence range is established by determining, from the appropriate cell in the grid, the designated sentence range for the most serious offense of conviction. The most serious offense is the offense with the longest statutory term of incarceration or the offense with the longest term of incarceration within the designated sentence range under the guidelines, whichever is greater.
2. After the base sentence range for the most serious offense has been determined, the remaining offenses provide the additional penalty to be imposed. No more than 50 percent of the minimum of the grid range for each of the subsequent offenses for which the offender is being sentenced should be added.
Defense counsel claims that the defendant’s sentence should be 43¾ years if he were a Class B offender or 34 years as a Class C offender. In State v. Smith, 610 So.2d 152 (La.App. 4th Cir.1992), writ granted 619 So.2d 556 (La.1993), this Court held that while a judge may go beyond the range set by the guidelines in sentencing a defendant, he must “justify such a departure by explaining why the ease at hand is not typical.” The Court also declared:
He must determine whether the significant presence of aggravating or mitigating cir *407 cumstances make[s] the present case more or less serious than the typical case arising under the offense. Louisiana Sentencing Guidelines § 209(B), (C). Smith, 610 So.2d at 154; State v. Gales, 622 So.2d 808 (La.App. 4th Cir.1993)
At the October 6, 1992 sentencing hearing the trial court stated:
... It was a rather horrible set of circumstances this Court had to view and to listen to a small child — a young girl who is now significantly older, somewhat older, talk about incidents of horror that she had to experience at your hands, Mr. Charles. You pretty much took her as you wanted....
This is an extremely horrible crime for me, because it is so bad because the child’s mother allowed you to come into the house. You not only took advantage of what the mother had to offer for you, but you also took advantage of her very small child. And I believe you received somewhat of a break from the State of Louisiana. When I listened to that child’s testimony, I felt maybe they made a mistake in charging you and there should have been an aggravated rape charged in connection with this matter. The victim in this case was believable. I believed what she had to say. The jury also found her testimony to be credible in finding you guilty of these charges. The Court is aware of 894.1, subpara-graphs (a) and (b); and the Court feels that if this defendant were to receive a suspended sentence or be placed on probation, there is a undue risk that during a period of a suspended sentence or probation that the defendant would commit another crime; secondly, the Court feels this defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and, finally, I feel that any lesser sentence than the one that I will impose will depreciate the seriousness of this particular charge.
The Court is also aware of 894.1, subpara-graph (b) in sentencing this defendant. This Court feels that the defendant’s criminal conduct did cause or threaten serious harm to the victim in this matter, B.W. The Court feels that the defendant contemplated that his conduct would cause or threaten serious harm. It has been related to this Court that the young lady is still receiving treatment for the trauma that she suffered as a result of your actions. The Court does not find that the defendant acted under any strong provocation. The Court did not find substantial grounds which tend to excuse or justify the defendant’s criminal conduct. The victim in this particular case, in my opinion, did not induce or facilitate the commission of this crime. Your defense in this particular matter was that the victim, the 12-year old child, consented to your having sex with her, an allegation that she adamantly denied during this particular trial. The Court is inclined to agree that this victim did not in any way induce or facilitate the commission of this offense. And, furthermore, even assuming your set of circumstances to be correct, that this small child would have consented to the act, a man of your age, of your years, should know better than to be dealing with a child of that age. The Court also finds that the defendant is not in a position to compensate the victim for his criminal activity. The defendant has a history of criminal delinquency and has not lead (sic) a law-abiding life for any substantial period of time prior to the commission of this crime. There were two incidents that you were involved with this child. You then left the household of the mother to do some time in jail for an offense [for] which you were arrested and convicted; and when you got out of jail the mother took you back into the house, and when you got back into the house you take advantage again of the child. The defendant’s criminal conduct is, in my opinion, the result of circumstances which are likely to occur again. The character and attitudes of the defendant indicate to me that he is likely to commit another crime if given a suspended sentence, if he is placed on probation for this particular crime. The defendant is also not particularly likely to respond affirmatively to probationary treatment. Imprisonment will entail a hardship to this defendant or any dependents that he may have; however, the *408 need to incarcerate him far outweighs the need to consider the hardship which will be suffered by any dependents or this defendant. The defendant’s voluntary participation in a pre-trial drug testing program is not applicable to this particular case.
[[Image here]]
Although the trial judge did not mention the sentencing guidelines, he complied by extensively detailing his reasons for sentencing the defendant. Although the trial judge did not restate his reasons at the multiple bill hearing on January 27, 1993, he vacated the sentence on the first count and resentenced the defendant to the same time of forty years which was previously imposed, with the result that the defendant would not have the benefit of “good time”. Considering that the sentence was otherwise unchanged, the previously stated reasons for sentencing are more than adequate to comply with any deviation from the new sentencing guidelines.
Accordingly, the defendant’s convictions and sentences are affirmed.

AFFIRMED.

BARRY, J., concurs with reasons.