632 So.2d 1187 (1994)
STATE of Louisiana
v.
Roland GREEN.
No. 94-K-0034.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 1994.
*1189 Jennifer A. Hinkebein, Kevin Boshea, Regan and Associates, Baton Rouge, for relator (Roland Green).
Harry F. Connick, Dist. Atty. of Orleans Parish, New Orleans, for State.
Before BYRNES, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
The relator raises two claims: (1) his guilty plea was not knowingly and freely given due to his incompetency; and (2) his counsel was ineffective for failing to challenge the procedure by which he was found competent to proceed; for failing to investigate the charges and prepare the case; and for counselling the relator to plead guilty to the charges, even though the relator's capacity to proceed was lacking. The relator bases both of these claims on his incompetency due to his diminished mental state and the court's failure to follow the procedures for determining competency to proceed as set forth in LSA-C.Cr.P. art. 641 et seq.
On March 27, 1989, the defendant was charged in case # 332-993 with one count of aggravated crime against nature. On March 30, 1989, he was indicted in case # 333-103 for one count each of aggravated rape and simple kidnapping. He was arraigned in both cases on April 5th and pled not guilty to all charges. On May 16th, in response to the defendant's motion for the appointment of lunacy commission, the trial court ordered a mental examination of the defendant by Dr. Juarez, and it reset the matter to May 24th. However, apparently no hearing was held on the issue of the defendant's sanity; the minute entry of May 24, 1989, merely states: "According to Dr. Juarez, the defendant is competent; thus a lunacy hearing is not needed. Trial is set for 7-14-89. PDOJL"[1] A motion hearing was held in September, 1989, and on November 17, 1989, the defendant withdrew his prior not guilty pleas. In case # 333-103, he pled guilty to simple kidnapping and to forcible rape, and he was sentenced to serve five years for the kidnapping charge and to thirty-five years without the benefit of parole, probation, or suspension of sentence for the rape charge, the sentences to run concurrently. On that same date in case # 332-933, he pled guilty as charged to the aggravated crime against nature charge and was sentenced to serve fifteen years at hard labor without the benefit of parole, probation or suspension of sentence, to be served concurrently with the sentences imposed in case # 333-103.
On March 31, 1992, the defendant filed an application for post conviction relief. Although a hearing date was set for April 24th, on that date the court merely denied the application without holding a hearing. Writ application 93-K-1325 was filed in this court on June 30, 1993. This court held:
Under the showing made in the writ application for supervisory writs, this Court is unable to determine why Dr. Juarez was ordered to examine the defendant. Therefore, this case is remanded to the trial court for an evidentiary hearing on the merits of relator's application for post conviction relief and to determine whether the proper procedures under LSA-C.Cr.P. art. 641 et seq., concerning the appointment of a sanity commission, were followed. This *1190 hearing shall be conducted within 60 days of this order and the trial court shall furnish this Court with proof of compliance.
The case was reallotted to Section "F" and a hearing was held on October 29, 1993. The trial court did not determine whether the proper procedures under LSA-C.Cr.P. art. 641 et seq. were followed, but concluded that the relator did not meet his burden of proving that the guilty pleas were not knowingly and voluntarily made.
LSA-C.Cr.P. art. 643 provides in part that a trial court "shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed." As noted above, on May 16, 1989, defense counsel filed a motion for the appointment of a sanity commission. Although the minute entry of that date does not state that the trial court granted the motion, the minute entry notes that the court "ordered that the defendant is to be examined by Dr. Juarez and reset this matter for the report from the doctor on 5-24-89." The trial court then relied on Dr. Juarez's report to conclude that the defendant was sane and could proceed to trial.
The trial judge's actions fall woefully short of what the Code of Criminal Procedure requires when a defendant files a motion for an appointment of a sanity commission. The court ordered a mental examination of the relator but did not appoint a sanity commission as required by LSA-C.Cr.P. art. 644 which provides in part that when a mental examination is ordered to determine competency to proceed, the court "shall appoint a sanity commission to examine and report upon the mental condition of the defendant." This commission must include at least two physicians (or a physician and a psychologist) to examine the accused. The sanity commission shall then issue a report of its findings to be made available to the court, the district attorney, and defense counsel (LSA-C.Cr.P. art. 645), and a contradictory hearing must be held to determine the issue of the defendant's mental capacity to proceed (LSA-C.Cr.P. art. 647). These procedures were not followed in this case.
Furthermore, by utilizing the procedure it did, the trial court abrogated its duty to determine the defendant's capacity to proceed. In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Court set forth factors which the trial court must take into consideration when determining whether a defendant is competent to proceed:
Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. See, State v. Augustine, [252 La. 983, 215 So.2d 634 (1968)] supra; Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists, 122 Am.J. of Psychiatry, at 616; Note, 6 Loyola Univ.L.J. at 684-5; Note, 4 Columb.Hum.Rights L.Rev. at 245. See also State v. Gurley, 565 So.2d 1055, 1059 (La. App. 4th Cir.1990), writ den. 575 So.2d 386 (1991). In its determination of competency, the trial court may seek the opinion of medical experts, but the ultimate decision rests solely with the trial court. State v. Brooks, 541 So.2d 801 (La.1989); State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. den. Lowenfield v. Louisiana, 476 U.S. *1191 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986).
Here, the trial court failed to follow the provisions of LSA-C.Cr.P. art. 641 et seq. in determining the relator's mental capacity to proceed. Instead of ordering a sanity commission comprised of at least two physicians as required by LSA-C.Cr.P. art. 644, and instead of holding a contradictory hearing on the issue of competency as mandated by LSA-C.Cr.P. art. 647, and instead of making the ultimate decision of the relator's competency, the trial court merely relied upon Dr. Juarez's estimation that the relator was competent to proceed to trial. Such failure to comply with the statutory scheme for determining competency violated the relator's due process rights. As noted in State v. Nomey, 613 So.2d 157, 161 (La.1993): "The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."
At the hearing conducted after remand from this court, present counsel presented evidence through the testimony of Dr. Zimmerman that the relator did not have the mental capacity to freely and voluntarily plead guilty to the charges in these cases. The trial judge after remand (Judge Waldron), relying on the conclusory report of Dr. Juarez and the "presumption of regularity" afforded judicial proceedings, concluded that the relator failed to meet his burden of proving that the guilty pleas were not knowing and voluntary. With due respect to Judge Waldron, the original trial court judge failed to comply with the statutory requirements, abrogated his responsibility to make the ultimate decision on the question of the relator's competency, and relied solely on Dr. Juarez's report, which consisted in its entirety of several conclusory remarks without any indication that the proper tests or examinations were performed. Dr. Zimmerman testified that there was no indication in the report that Dr. Juarez performed any assessment tests which are necessary to determine the defendant's ability to understand the rights he was waiving when he plead guilty. Dr. Zimmerman testified that, based on the results of the tests he performed on the defendant, the defendant would not have the ability to understand the rights he was waiving by entering a plea of guilty. This testimony is sufficient to show that the defendant was unable to knowingly and voluntarily understand and waive his Boykin rights. Additionally, the transcript of the defendant's guilty plea shows that the relator did not even answer to the trial judge, but merely nodded his head.
However, defense counsel at that time apparently did not object to the procedures employed by the court and the relator claims that counsel was ineffective for failing to object to the lack of proper procedures. A claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
If an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Gales, 622 So.2d 808, 811 (La.App. 4th Cir.1993); State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). Also, because opinions may differ on the advisability of a trial strategy, hindsight by the reviewing court is not the proper perspective for judging the competence of counsel's trial decisions. *1192 Furthermore, an attorney's level of competence should not be determined by whether a particular strategy is successful. State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363; Gales.
In the present case, based on the testimony of Dr. Zimmerman and the woefully inadequate procedures employed by the trial court, trial counsel's failure to object deprived the relator of effective assistance of counsel. Trial counsel was not functioning as counsel guaranteed by the Sixth Amendment when he permitted his client to enter pleas of guilty to these charges. This was not a decision about trial strategy. Counsel permitted a mentally retarded defendant to plead guilty to charges knowing (and actually stating in a motion filed in the trial court that he had "good reason to believe the defendant, ROLAND GREEN, is not of sound mind and understanding and is insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense") that his client probably could not understand the proceedings. This deficiency certainly prejudiced the defendant.
Accordingly, this writ application is granted, the ruling of the trial court reversed, and the case is remanded to the trial court to allow the defendant an opportunity to withdraw his guilty pleas to these offenses.

WRIT GRANTED; APPLICATION FOR POST CONVICTION GRANTED; CASE REMANDED FOR FURTHER PROCEEDINGS.
LANDRIEU, J., concurs in the result.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissenting with reasons:
I respectfully dissent.
LSA-C.Cr.P. art. 643 provides that the trial court shall order a mental examination of a defendant when it has reasonable ground to doubt the defendant's mental capacity. Given the presumption of sanity under Louisiana law, the defense carries the burden of proving by a preponderance of evidence that the defendant lacks the capacity to understand the proceedings against him or to assist in his defense. State v. Rogers, 419 So.2d 840 (La.1982). The appointment of a sanity commission is not guaranteed to every accused. State v. Lott, 574 So.2d 417 (La.App. 2 Cir.), writ denied 580 So.2d 666 (La.1991). The appointment of a jury commission rests in the sound discretion of the trial court. State v. Young, 576 So.2d 1048 (La.App. 1 Cir.), writ denied 584 So.2d 679 (La.1991).
In State v. Felo, 454 So.2d 1150 (La.App. 4 Cir.1984), writ denied 488 So.2d 686 (La. 1986), based on the demonstration that the defendant was slower than average and sometimes responded inappropriately to authority figures, this court found that the trial court did not abuse its discretion in not appointing a sanity commission. In State v. Charles, 450 So.2d 1287 (La.1984), although the defendant had an I.Q. of 47, the Louisiana Supreme Court found that the mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. In State v. Ellis, 555 So.2d 608 (La.App. 4 Cir.1989), this court found that the mother's statement that the defendant had a history of mental problems did not provide reasonable ground to doubt the defendant's mental capacity.
In a determination of competency, the trial court may seek the opinion of medical experts, but the ultimate decision rests solely with the trial court. State v. Brooks, 541 So.2d 801 (La.1989); State v. Lowenfield, 495 So.2d 1245 (La.1985), certiorari denied Lowenfield v. Louisiana, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986).
In this case Roland Green did not enter a plea of not guilty and not guilty by reason of insanity. At the hearing on post conviction motions, the psychologist, Dr. Marc L. Zimmermann, testified that the defendant understood the rights he was waiving as a child understands them, and he functioned as an individual aged six to eight. Dr. Zimmermann stated that the defendant had no mental disorder but he functions at a low level. He agreed that the defendant was able to communicate with him. In his report dated May 10, 1993 Dr. Zimmermann found that the defendant was friendly and cooperative; *1193 his speech was relevant and coherent at all times; his volume and rate of speech was within normal limits; his recent and intermediate memory appeared to be intact; and there were no signs of any illusions, delusions, or hallucinations.
In his report of May 17, 1989 Dr. Cyril Juarez stated his conclusions that the defendant presented no evidence of psychosis or affective disorder; he is able to communicate effectively and convey his thoughts in an orderly fashion; he is able to assist his attorney; he is aware of social mores and legally acceptable behavior; and he is able to distinguish right from wrong.
Based on the Wechsler Adult Intelligence Scale, Dr. Zimmermann stated that the defendant had an I.Q. of 66 on the verbal test; he had an I.Q. of 65 on the performance test; and he had an I.Q. of 63 on the full scale. I cannot say that these findings do not support Dr. Juarez's conclusion that the defendant was competent to stand trial at that time. On the showing made, I cannot say that the original trial court's finding on capacity to proceed was clearly wrong or that the original trial court abused its discretion in not appointing a lunacy commission. The records shows that the original trial court advised the defendant of his constitutional rights, which the defendant freely and voluntarily waived when he entered his pleas of guilty.
NOTES
[1] "Put defendant on Jail List"