# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00196-SCT

*GARY CARL SIMMONS, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/02/1997 |
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL<br>BY: ROBERT M. RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JUDY T. MARTIN<br>MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | MOTION FOR LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 01/29/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Gary Carl Simmons, Jr., was convicted of capital murder and sentenced to death for the murder

of Jeffery Wolfe.  Simmons was also convicted of the rape and kidnaping of Wolfe's female companion.

On direct appeal Simmons raised twenty-seven issues.  This Court found those issues to be without merit

and affirmed Simmons's conviction and death sentence. *See Simmons v. State*, 805 So.2d 452 (Miss. 2001), *cert. denied*, 537 U.S. 833, 123 S. Ct. 142, 154 L.Ed. 2d 51 (2002).

¶2.    Simmons subsequently filed his Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief, Supplement/Amendment to Petition for Post-Conviction Relief, Correction to Supplement/Amendment, and Supplemental Authority with this Court. The State has filed its Response, and Simmons has filed his Reply Brief.

¶3.    Simmons's Petition for Post-Conviction Relief raises the following issues:

I.    **PETITIONER WAS UNFAIRLY DENIED BY THE TRIAL COURT OF HIS RIGHT TO PRESENT TO THE TRIAL JURY A VIDEOTAPE HE HAD MADE WITHIN HOURS AFTER THE OFFENSE IN WHICH HE HAD EXPRESSED REMORSE, HUMANITY AND DEMEANOR  PARTICULARLY AT THE PENALTY PHASE, IN VIOLATION OF ESTABLISHED FEDERAL AND STATE CASE LAW.**

II.    **PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WITHIN THE MEANING OF *STRICKLAND v. WASHINGTON*.**

   A.    **Trial Counsel's Inadequate Investigation and Presentation of Mitigation Factors at the Penalty Phase.**

   B.    **DNA Evidence.**

   C.    **Cumulative Effect of Counsel's Failure to Make Contemporaneous Objections to Damaging Testimony, the Result of Which was Ineffective Assistance of Counsel Within the Meaning of *Strickland v. Washington*.**

III.    **SIMMONS WAS DENIED THE EFFECTIVE ASSISTANCE OF CONFLICT FREE COUNSEL AND THE FAILURE OF THE TRIAL COURT TO INQUIRE INTO THE CONFLICT VIOLATED HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT**

2

RIGHTS AND CORRESPONDING PROVISIONS OF THE MISSISSIPPI CONSTITUTION.

IV.     THE MITIGATION TESTIMONY OF LORI SIMMONS, EX-WIFE OF THE PETITIONER, WAS UNFAIRLY LIMITED BY THE TRIAL COURT AND AS A RESULT SIMMONS WAS DENIED HIS FUNDAMENTAL CONSTITUTIONAL RIGHT TO CALL WITNESSES TO TESTIFY ON HIS BEHALF.

V.      THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY THE AGGRAVATING CIRCUMSTANCE THAT THE DEFENDANT KNOWINGLY CREATED A GREAT RISK TO MANY PERSONS.

VI.     THE PETITIONER'S MOTIONS FOR A CONTINUANCE SHOULD HAVE BEEN GRANTED AND THE FAILURE TO DO SO WAS REVERSIBLE ERROR.

VII.    THE SENTENCE RENDERED AGAINST PETITIONER GARY CARL SIMMONS IS DISPROPORTIONATE TO THAT OF HIS CO-DEFENDANT, THE PERSON WHO SHOT AND KILLED JEFFERY WOLFE, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.

VIII.   PETITIONER WAS DENIED HIS RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND MISSISSIPPI LAW DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AT HIS CAPITAL TRIAL.

¶4.     Simmons's Supplement/Amendment to Petition raises the following supplemental issues:

IX.     THE AGGRAVATING FACTORS ELEVATING THE CHARGE TO A CAPITAL OFFENSE WERE NOT INCLUDED IN SIMMONS' INDICTMENT AND THEREFORE HIS DEATH PENALTY MUST BE VACATED.

        A.      In *Ring v. Arizona*, the U.S. Supreme Court held that aggravating circumstances function as elements of the offense of capital murder.

**B.** **In its requirement that at least one aggravating circumstance be found before the death penalty can be imposed, Mississippi's capital sentencing scheme is indistinguishable from the Arizona scheme rejected in *Ring*.**

**C.** **Capital murder may be charged only upon an indictment alleging all of the elements of the crime to be proved.**

**X.** **THE TRIAL COURT ERRED IN CHARGING THE TRIAL JURY WITH STATE REQUESTED INSTRUCTION S-11 AS THE SAME IS AN INCORRECT STATEMENT OF THE LAW OF THE STATE AND AS A RESULT SIMMONS WAS UNFAIRLY PREJUDICED AND DENIED A FUNDAMENTALLY FAIR TRIAL.**

¶5. The State has moved to strike the issues raised in the Supplement/Amendment, saying they could have been raised earlier. We deny the motion to strike, as this Court granted Simmons time to supplement his initial Petition for Post-Conviction Relief, and the Supplement/Amendment was filed as a result.

## FACTS

¶6. Jeffery Wolfe and Charlene Brooke Leaser drove from Houston, Texas, to Jackson County, Mississippi, in August 1996 to collect money owed Wolfe from a drug transaction. Wolfe and Leaser met with Gary Simmons and Timothy Milano at Simmons's house on the evening of August 12. Initially the men discussed the money owed to Wolfe, but after failing to resolve the matter Milano shot Wolfe with a .22 caliber rifle. Simmons then bound Leaser and locked her in a metal box. Leaser tried repeatedly to escape from the box, and on one occasion Simmons heard her attempting to escape, removed her from the box and raped her. He then returned her to the box. Simmons then dismembered Wolfe's body and dumped the various body parts in the bayou behind his house. Leaser eventually escaped and convinced a neighbor to call the police.

## DISCUSSION

**I.** **EXCLUSION OF A VIDEOTAPE.**

4

¶7.     Simmons made a videotape of himself after the murder of Wolfe and sent it to his wife, who in turn delivered it to his lawyer. The videotape was eventually produced to the State. Simmons did not testify at trial but attempted to introduce the videotape. The trial court excluded the videotape, and Simmons raised this as error on direct appeal. This Court found that the videotape inadmissible because it was hearsay and not relevant. *Simmons*, 805 So.2d at 488. Three members of the Court acknowledged that the videotape was properly excluded in the guilt phase of the trial, but found that it should have been admitted during the sentencing phase as part of Simmons's mitigating evidence. *Simmons*, 805 So.2d at 508-11 (Diaz, J., concurring in part and dissenting in part).

¶8.     Simmons argues that it was error for the trial court to exclude the videotape during the sentencing phase because (1) it showed remorse by Simmons and would have rebutted the prosecution's argument during sentencing that Simmons showed no remorse and (2) the admission of evidence should be relaxed during the sentencing hearing.

¶9.     The State argues that Simmons's argument is barred under Miss. Code Ann. § 99-39-21, which provides in part:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
>
> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.
>
> (3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

¶10.    We agree and hold that Simmons's argument is barred by res judicata.

## II.    EFFECTIVE ASSISTANCE OF COUNSEL.

¶11.    This Court has stated the following on ineffective assistance of counsel and the standard provided

in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. *Id.* at 687, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State,* 454 So.2d 468, 477 (Miss.1984) (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

>> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

> *Stringer,* 454 So.2d at 477 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Defense counsel is presumed competent. *Id.*

>> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State,* 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id.* The question here is:

>>> whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the

6

extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991).

*Davis v. State*, 743 So.2d 326, 334 (Miss.1999) (citing *Foster v. State*, 687 So.2d 1124, 1130 (Miss.1996)).

*Brown v. State*, 798 So.2d 481, 493-94 (Miss. 2001).

**A.     Trial Counsel's Investigation and Presentation of Mitigation Factors at the Penalty Phase.**

¶12.    Simmons called the following witnesses in his sentencing hearing:  Jewell Simmons, his paternal grandmother; Milton Dupuis, his half-brother; Dana Vanzante, a friend; Lynette Holmes, a friend of Simmons's ex-wife, Lori; Belinda West, Simmons's half-sister; and Lori Simmons, Simmons's ex-wife. The witnesses testified that Simmons was a good person, a loving husband and father to his two daughters, and he was a different person from the one portrayed at trial.  Milton Dupuis testified that his father, Gary's stepfather, beat them "every day just about," and Gary got the worst of it because he was the oldest. Dupuis testified that his father also beat their mother and once when Gary tried to defend her, the stepfather shot at him.  Dupuis stated that Gary led him to have a religious conversion, but when Gary and Lori divorced, Gary started making bad decisions.  There was also testimony that Gary had been barred from residing in the house with Lori's two older children from another marriage, but the reasons given for this

were not clear. Simmons argues that his counsel was ineffective for failure to adequately investigate his background and family and to procure a professional expert to evaluate this information for the jury.

¶13. Simmons cites *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), where the United States Supreme Court found that counsel had been ineffective at the sentencing phase of trial because of counsel's failure to investigate and uncover proof of Williams's tragic childhood because counsel thought that state law barred access to certain relevant records. The Court said counsel could have discovered that Williams's parents had been imprisoned for criminal neglect of their children, that Williams had been beaten by his father, that Williams had spent time in an abusive foster home, that Williams was borderline mentally retarded and did not advance past the sixth grade in school, and that Williams had helped authorities during his stay in prison.

¶14. Simmons also cites *Jackson v. Calderon*, 211 F.3d 1148 (9th Cir. 2000), where Jackson's attorney was found to have been ineffective in the sentencing phase for spending about two hours investigating in preparation for sentencing and calling only Jackson's estranged wife and mother as witnesses. In invalidating the death sentence, the Ninth Circuit stated that Jackson's attorney never investigated beyond the mother and wife because he never expected the case to reach the sentencing phase, and he never investigated or presented evidence concerning Jackson's addiction to PCP or his PCP intoxication at the time of the murder, never investigated a separate aggravating factor, and never investigated beatings Jackson had endured as a child or signs that Jackson was mentally ill. See also *Smith v. Stewart*, 140 F.3d 1263 (9th Cir. 1998) (death sentence vacated where counsel presented no mitigating evidence when evidence concerning mental problems, drug abuse and family ties was available).

8

¶15.    Simmons cites *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir. 1995), which is not an ineffective assistance of counsel case. *Castro* deals with whether the trial court erred in refusing to provide funds for a psychiatric expert for Castro's defense.

¶16.    Simmons finally cites ***Wiggins v. Smith***, ____U.S. ___, 123 S.Ct. 2527, 156 L. Ed. 2d 471 (2003), where the United States Supreme Court found that Wiggins received ineffective assistance of counsel because his trial counsel had failed to investigate and present mitigating evidence of Wiggins's background, including physical and sexual abuse committed by his mother, by a series of foster parents, and a Job Corps supervisor, as well as evidence of mental retardation. Counsel for Wiggins failed to make this investigation even though the State made funds available for this purpose. Trial counsel instead attempted to show that Wiggins was not responsible for the murder in question. The Supreme Court stated:

> In finding that Schlaich and Nethercott's investigation did not meet ***Strickland*'s** performance standards, we emphasize that ***Strickland*** does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does ***Strickland*** require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the "constitutionally protected independence of counsel" at the heart of ***Strickland***, 466 U.S., at 689, 104 S.Ct. 2052. We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." *Id.,* at 690-691, 104 S.Ct. 2052. A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." *Id.,* at 691, 104 S.Ct. 2052.
>
> Counsel's investigation into Wiggins' background did not reflect reasonable professional judgment. Their decision to end their investigation when they did was neither consistent with the professional standards that prevailed in 1989, nor reasonable in light of the evidence counsel uncovered in the social services records--evidence that would have led a reasonably competent attorney to investigate further. Counsel's pursuit of bifurcation until the eve of sentencing and their partial presentation of a mitigation case suggest that their incomplete investigation was the result of inattention, not reasoned strategic judgment. In deferring to counsel's decision not to pursue a mitigation case despite their unreasonable investigation, the Maryland Court of Appeals unreasonably applied ***Strickland***.

Furthermore, the court partially relied on an erroneous factual assumption. The requirements for habeas relief established by 28 U.S.C. §§ 2254(d) are thus satisfied.

*Wiggins*, 123 S.Ct. at 2541-42.

¶17.    The State argues that Simmons's counsel was not ineffective for failure to procure a psychological or mitigation expert because he was not entitled to one.  The State cites *Bishop v. State*, 812 So.2d 934, 939-40 (Miss. 2002), where this Court stated:

> A defendant is not entitled to a psychological expert where he has not raised insanity as a defense or where the State does not plan to submit psychological evidence against the defendant. *Ladner v. State*, 584 So.2d 743, 757 (Miss.1991); *Nixon v. State*, 533 So.2d 1078, 1096 (Miss.1987). As we have stated, "[w]here a defendant offers no more 'than undeveloped assertions that the requested assistance would be beneficial,' no trial court is under an obligation to provide him with fishing equipment." *Griffin v. State*, 557 So.2d 542, 550 (Miss.1990) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985)).

> Bishop did not raise an insanity defense; he offered no facts which would show that there was a need to develop mitigating evidence based on psychological problems; and he underwent a thorough psychological evaluation performed at the State Hospital which produced no mitigating evidence.

> We therefore find that Bishop was not entitled to a psychological expert for the purpose of developing mitigating evidence.

In this case Simmons did not raise an insanity defense.  His mental condition was not an issue in this case.

¶18.    In addition, Simmons offers no evidence now which supports his claim that his trial counsel should have investigated more thoroughly, or in certain areas, even under the authority he cites.  Simmons offers nothing in support from mental health experts who can now say what an investigation of Simmons or his family background would have shown, or what such experts would now be willing to testify to.  Simmons offers nothing from his trial attorney on how much time he spent preparing for the sentencing phase and why he did not feel the need to offer more or different evidence on mitigation.  In *Wiggins v. Smith*, *Jackson v. Calderon*, and *Williams v. Taylor* refer to potential mitigation evidence contained in school records,

hospital records, prison records and expert findings. Here Simmons presents the affidavits of an investigator from the Office of Capital Post-Conviction Counsel, who interviewed Simmons's grandmother and sister, Jewel and Belinda Simmons. The first affidavit states that Jewel Simmons loved Gary and was upset with the verdict. The affidavit further states that Gary's father refused to talk to the investigator and that Jewel would not sign an affidavit because of Gary's father. Gary's mother, Mildred, never attended the trial because she was embarrassed. Mildred had a gambling problem which caused hardship for the family. Mildred remarried when Gary was three, and Gary's stepfather was very abusive. The investigator's other affidavit describes an attempt to interview Gary's ex-wife, Lori, who, according to the investigator, did not want to answer questions about Gary. The State argues that the affidavits are primarily hearsay, and we agree. In addition some of what is contained in the affidavits was presented at trial.

¶19.    In conclusion we find that, Simmons has not submitted sufficient evidence of a breach of the duty of counsel to investigate and present mitigation evidence as described by the United States Supreme Court in *Wiggins v. Smith*,.

¶20.    Simmons also argues that trial counsel was ineffective for failure to interview the State's witnesses, particularly Charlene Brooke Leaser, before trial, and for failure to cross-examine Leaser on her previous guilty pleas in Texas state court to DUI and credit card abuse, and revocation of probation on credit card abuse. The State argues that impeachment would have been permissible only on the credit card issue. The State also argues that it could have been trial strategy not to cross-examine this young rape victim any more vigorously considering what she had allegedly suffered.

¶21.    We find nothing in this record to indicate whether defense counsel interviewed Leaser. As for the impeachment Simmons suggests, we doubt that it would have been significant considering that (1) the State's DNA testimony supported Leaser's testimony and (2) Simmons did not testify, so there was no

testimony to contradict Leaser's version of the events surrounding Jeffery Wolfe's death. We hold that this issue is without merit.

### B. DNA Evidence.

¶22.    Simmons next argues that his trial counsel was ineffective for failure to adequately prepare for the examination of Deborah Haller, the State Crime Lab's DNA expert. Simmons states that his counsel should have begun the process of procuring funds and finding a DNA expert "at least three months prior to the production of the State's DNA report that they were doing DNA testing," or at least three months prior to July 23, 1997, because counsel for Simmons allegedly knew at this time that the State was doing DNA testing. This is the argument that the State made at trial and on direct appeal in response to Simmons's request for continuance. *See Simmons*, 805 So.2d at 484. The State argued at trial and on direct appeal that counsel for Simmons was at fault for not timely finding a DNA expert. Here, Simmons adopts the State's trial and direct appeal argument. The State, faced with its arguments made at trial and on direct appeal concerning defense counsel's lack of competence, now states, "It is unclear what more trial counsel could have done."

¶23.    Deborah Haller, the State's DNA expert, testified concerning blood found in a bucket near a boat used by Simmons, muscle tissue found in the bathroom in Simmons's home, a bush hook, and a knife collected from the bathroom of Simmons's home. As to these items Haller testified that the probability of the blood belonging to someone besides Jeffery Wolfe was one in 390,000 in the Caucasian population. Haller also testified that the DNA material found on a condom collected from a wastebasket in Simmons's bathroom was consistent with that of Simmons and Charlene Leaser.

¶24.    This testimony was critical on the matter of Simmons's participation in the case. It also supported Leaser's testimony that Simmons had raped her. The State argues that this issue is in part a restatement

of issues raised on direct appeal concerning whether the trial court erred in admitting Haller's testimony and whether the trial court erred in refusing to grant a continuance to Simmons so that his expert could have more time to review the DNA evidence. The State also argues that defense counsel's conduct was not deficient and that Simmons did not at trial and does not here proffer and evidence which would show that Haller's testimony was incorrect or flawed in any way.

¶25. We agree with the State's last argument. Even if one conceded that the first prong of the *Strickland v. Washington* test, that of deficient conduct by defense counsel, was met here, there is still the matter of prejudice. Simmons has produced nothing, even at this time, from Dr. Ron Acton, Simmons's DNA expert at trial, or anyone else, which calls into question the accuracy of the results testified to by the State's DNA expert. Without such evidence prejudice cannot be shown, and this issue is without merit.

### C. Cumulative Effect of Counsel's Failure to Make Contemporaneous Objections.

¶26. Simmons next argues that the failure of his trial counsel to make contemporaneous objections on numerous occasions amounted, in a cumulative manner, to ineffective assistance of counsel. The State argues that this Court noted all of these instances in its opinion, including the fact that no contemporaneous objection had been made by the defense, and reached the merits of each argument regardless, finding that none of the claims amounted to error. The State argues that because this Court considered each of these instances on the merits and found that there was no error, then a claim for ineffective assistance of counsel can not be supported because the prejudice prong of the *Strickland* test cannot be met. We agree and hold that this issue is without merit.

### III. EFFECTIVE ASSISTANCE OF CONFLICT FREE COUNSEL.

¶27.    Simmons next argues that he was denied effective assistance of counsel because his trial counsel, Harvey Barton, had before the trial represented a state witness, Dennis Guess, and represented Guess's father at the time of Simmons's trial. Simmons argues that this amounted to a conflict of interest and the trial judge should have declared a mistrial.

¶28.    This issue was raised by Simmons on direct appeal. This Court found that there was "no evidence in the record to suggest that defense counsel acted in some manner other than capable." **Simmons**, 805 So.2d at 480. The issue is barred by res judicata pursuant to Miss. Code Ann. § 99-39-21(3).

### IV.    MITIGATION TESTIMONY OF LORI SIMMONS.

¶29.    Simmons next argues that "his ex-wife, Lori Simmons, was not permitted to fully testify as to matters pertaining to mitigation factors offered by him at the sentencing phase of the proceeding. Numerous times the State objected to responses to defense questions during her examination at trial. Simmons alleges that the adverse rulings by the trial court violated his fundamental right to call witnesses on his behalf."

¶30.    This issue was presented to this Court on direct appeal. The Court found that "the trial judge may have initially erred in sustaining the State's objections to several questions posed to Lori, in fact, subsequently, she was allowed to respond and fully explore the issues posed by the previous denied questions," and any error was harmless. **Simmons**, 805 So.2d at 498.

¶31.    The State argues that Simmons is barred by res judicata from raising this issue now, as it was decided on direct appeal. Simmons provides no exception to this rule. Simmons does attach an affidavit from an employee of the Office of Capital Post-Conviction Counsel, which states that the employee attempted to contact Lori Simmons, who declined to answer any questions about the case. That Lori Simmons refuses to answer questions now about the case is not relevant on the question of whether Gary Simmons received a fair trial. We hold that this issue is without merit.

14

### V. AGGRAVATING CIRCUMSTANCE THAT SIMMONS KNOWINGLY CREATED A GREAT RISK TO MANY PERSONS.

¶32.   At trial the jury found two aggravating circumstances:  one was that the capital offense was committed for pecuniary gain, and the second was that "the defendant knowingly created a great risk of death to many people."  On direct appeal Simmons argued that the second aggravator was supported by insufficient evidence.  This Court found "that the evidence regarding Simmons' disposal of Wolfe's remains into the bayou constituted knowingly creating a great risk to many people. There is no reversible error here." ***Simmons***, 805 So.2d at 497.

¶33.   Simmons now makes the same argument on post-conviction, that "the prosecution failed to introduce adequate and sufficient evidence to convince a jury beyond a reasonable doubt that petitioner had knowingly created a great risk to many persons as a matter of law."  We hold that this issue is barred by res judicata.

¶34.   Simmons also argues that "[i]t should not matter either, if a defendant fails to object to any such charge or erroneous instruction as under the recent case of ***Ring v. Arizona***, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), the Sixth Amendment requires that any finding of fact that makes a defendant eligible for the death penalty must be unanimously made by the jury beyond a reasonable doubt."  Though the record is not clear whether defense counsel objected or not, this is irrelevant, as this Court considered the merits of the argument and found there was no error.  Even if ***Ring*** did apply, the jury did find the aggravating circumstance in question beyond a reasonable doubt.

¶35.   Simmons argues that this Court's finding on direct appeal that one scenario, the repeated firing of a rifle in a residential neighborhood, did not sufficiently support the aggravator in question, but that placing Jeffery Wolfe's remains in community waters did support the aggravator, amounts to appellate fact-finding

15

or reweighing. We disagree. This Court reviewed the entire record on direct appeal and found that the aggravating circumstance in question was supported by certain evidence. We hold that this issue is without merit.

## VI. MOTIONS FOR A CONTINUANCE.

¶36. Simmons next argues that the trial court erred in failing to grant a continuance due to the State's intention to offer DNA evidence in support of its case and Simmons's resulting attempt to rebut this evidence. This issue was raised on direct appeal. This Court found that Simmons had not shown sufficient evidence, in a timely manner, to support the granting of a continuance. *Simmons*, 805 So.2d at 484-85. The State answers that as this issue was raised and rejected on direct appeal, it is barred by res judicata here. Simmons provides no reason that an exception to the bar should be considered. We hold that this issue is without merit.

## VII. PROPORTIONALITY OF DEATH SENTENCE.

¶37. Simmons next argues that his death sentence is disproportionate because Timothy Milano, not Simmons, actually fired the shots that killed Jeffery Wolfe. Milano received a life sentence. Simmons argues that this disparity in sentences is unfair, and also argues that there is no evidence that Simmons was a leader, planner and/or instigator of the killing. This issue was also raised on direct appeal. This Court rejected this issue, noting that the jury had found that Simmons intended Wolfe's death and contemplated that lethal force would be used, that the death penalty had been affirmed for others who had not done the actual killing and that ample evidence showed that Simmons actively planned and participated in the robbery and murder. *Simmons*, 805 So.2d at 507.

¶38. Simmons cites *Bishop v. State*, 812 So.2d 934 (Miss. 2002), where Bishop was not the primary killer. The State argues that *Bishop* is more supportive of its argument, as Bishop received the death

penalty while Jessie Wayne Johnson, who inflicted the lethal blows in that case, received life without parole. We agree with the State. The Court has also found the death penalty not to be disproportionate for an aider and abbetter who is not the actual killer in several other cases. *Smith v. State*, 729 So. 2d 1191 (Miss. 1998); *Ballenger v. State*, 667 So. 2d 1242 (Miss. 1999); *Carr v. State*, 655 So. 2d 824 (Miss. 1995); *Abram v. State*, 606 So. 2d 1015 (Miss. 1992); *Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

¶39.    Simmons also cites *Randall v. State*, 806 So.2d 185 (Miss. 2001), where this Court found that, where there was no proof as to who actually killed the victim, and the other co-defendants received sentences of less than death, and the jury only found that Randall contemplated that lethal force would be used and nothing else, then the death sentence was disproportionate. While Simmons's case does have similarities to *Randall*, the case at bar, as this Court noted on direct appeal, the jury found that Simmons intended the killing of Jeffery Wolfe to take place, in addition to finding that Simmons contemplated that lethal force would be employed. This Court specifically found that under these circumstances the death penalty was not disproportionate.

¶40.    Simmons also cites *Bullock v. State*, 525 So.2d 764 (Miss. 1987), and *Duplantis v. State*, 644 So.2d 1235 (Miss. 1994). In *Bullock*, this Court rendered a sentence of life imprisonment where Bullock's co-defendant actually killed the victim and received a life sentence. In *Duplantis* this Court reversed a murder conviction and death sentence on other grounds and intimated that the State's proof might have been insufficient on the issue of proportionality in the first trial. We find neither case to be controlling here.

¶41.    Simmons also cites as intervening cases *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).  The Supreme Court held in *Ring* that only a jury may find an aggravating circumstance necessary for the imposition of the death penalty.  The Supreme Court held in *Apprendi* that any fact, other than a previous conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  Neither case changes or expands the law on proportionality.  The issue was dealt with on direct appeal, and we hold that it is barred by res judicata at the post-conviction level.

## VIII.    CUMULATIVE ERROR.

¶42.    Simmons next argues that even if none of the alleged errors, cited individually, may be basis for relief, the cumulative effect of all the errors viewed together mean that Simmons is entitled to relief.  Simmons raised the cumulative error issue on direct appeal.  The Court found the argument was without merit:

> Simmons's final assertion of error is that each of the above enumerated errors, when taken together, warrant reversal as cumulative error. Simmons cites *Hickson v. State,* as authority for this proposition when this Court held that reversal was warranted by their perception of a combined prejudicial impact of two actions taken by the State that substantially compromised Hickson's right to a fair trial. *Hickson v. State,* 472 So.2d 379, 385 (Miss.1985).
>
> The State counters with a quote from *Doss v. State,* which reads "[w]here there is no reversible error in any part, .... there is no reversible error to the whole." *Doss v. State,* 709 So.2d 369, 401 (Miss.1996). Additionally, this Court has held that a murder conviction or a death sentence will not warrant reversal where the cumulative effect of alleged errors, if any, was procedurally barred. *Doss,* 709 So.2d at 401. Cumulatively, these errors do not warrant reversal.

*Simmons*, 805 So.2d at 508.  Even with the additional arguments made here that were not made on direct appeal, we hold that this issue is without merit.

18

### IX. OMISSION OF THE AGGRAVATING FACTORS ELEVATING THE CHARGE TO A CAPITAL OFFENSE FROM INDICTMENT.

#### A. *Ring v. Arizona*.

¶43. Simmons argues that his indictment is unconstitutional for failure to include and specify the aggravating factors used to sentence him to death. This issue was not raised at trial or on direct appeal and normally would be procedurally barred However, Simmons primarily relies on *Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed 2d 311 (1999), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 ( 2002), as intervening decisions which would nullify the procedural bar.

¶44. In *Jones v. United States* the United States Supreme Court considered a federal carjacking statute. The Supreme Court found in *Jones* that the carjacking statute, which allowed three different punishments increasing in severity depending on the degree of violence used or physical harm accomplished by the carjacker, could result in three distinct offenses, all of which had to be charged in the carjacker's indictment:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt.

*Jones*, 526 U.S. at 243 n.6 (emphasis added).

¶45. *Jones* was followed by *Apprendi*. Apprendi fired several shots into the home of an African-American family in Vineland, New Jersey. Apprendi was indicted on numerous state charges of shooting and possession of firearms. He eventually pled guilty to two counts of possession of a firearm for unlawful purpose and one count of possession of an explosive. After the judge accepted the guilty pleas, the

prosecutor moved for an enhanced sentence on one of the counts on the basis that it was a hate crime. The judge concurred and rendered an enhanced sentence on twelve years on that particular count, with shorter concurrent sentences on the other two counts.

¶46. Relying in part on *Jones*, Apprendi argued that he was entitled to have the finding on enhancement decided by a jury. The Supreme Court agreed, stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. However, the Court specifically stated that "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. . . . We thus do not address the indictment question separately today." *Apprendi*, 530 U.S. at 477 n.3.

¶47. The Court found in *Apprendi* that New Jersey's statutory scheme would allow a jury to convict a defendant of a second degree offense of possession of a prohibited weapon, and then, in a separate subsequent proceeding, allow a judge to impose a punishment usually reserved for first degree crimes made on the judge's finding based on a preponderance of the evidence. The *Apprendi* Court finally stated that its decision did not apply to capital sentencing cases, even those cases where the judge was the one deciding whether to sentence the defendant to death or some lesser sentence, citing *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047, 111 L. Ed. 2d 511(1990), where the Arizona capital sentencing process had been upheld.

¶48. In 2002, the U.S. Supreme Court decided *Ring v. Arizona*. *Ring* addressed the issue of whether the Arizona capital sentencing process as upheld in 1990 in *Walton v. Arizona*, that of a jury deciding guilt and a judge making findings on aggravating factors, could survive the *Apprendi* decision.

20

The Supreme Court decided it could not. Despite the efforts in **Apprendi** to distinguish non-capital enhancement cases from aggravating circumstances in capital cases in this context, the Supreme Court in **Ring** found that there was no difference.

> [W]e overrule **Walton** to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. *See* 497 U.S., at 647-649, 110 S.Ct. 3047. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," **Apprendi**, 530 U.S., at 494, n. 19, 120 S.Ct. 2348, the Sixth Amendment requires that they be found by a jury.
>
> * * *
>
> > "The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. ... If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it." **Duncan v. Louisiana**, 391 U.S. 145, 155-156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
>
> The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death. We hold that the Sixth Amendment applies to both.

**Ring**, 536 U.S. at 609.

¶49. Simmons's argument is that because **Ring** found the **Apprendi** decision persuasive on the issue of Arizona's enumerated aggravating factors operating as "the functional equivalent of an element of a greater offense," the Supreme Court necessarily adopted every other rule stated in **Apprendi** for state capital sentencing proceedings, specifically the rule first cited in **Jones v. United States**, that the Constitution requires that aggravating factors be listed in indictments. We find this argument is incorrect. **Ring** only found juries must find aggravating factors: "Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. . . . Finally, Ring does not contend that his indictment was constitutionally defective. See **Apprendi**, 530

U.S. at 477 n.3, 120 S.Ct. 2348 (Fourteenth Amendment "has not . . . been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'"). *Ring*, 536 U.S. at 597 n.4.

### B. Mississippi's capital sentencing scheme.

¶50. Simmons's argues: "Although Mississippi's capital sentencing scheme is not identical in all respects to the Arizona scheme rejected by the United States Supreme Court in *Ring*, the two schemes are identical in the respects relevant to this case." This is incorrect. The two sentencing schemes are different in the only respect relevant to *Ring*, that of who finds aggravating circumstances that lead to the death sentence. Under Arizona's scheme, the judge did this, and for this reason Arizona's scheme was found to be unconstitutional. Under this state's statutory scheme, and in Simmons's case the jury found the aggravating circumstances. We hold that there is no infirmity under *Ring*.

### C. Indictment alleging all of the elements of the crime to be proved.

¶51. Simmons sums up his argument concerning the alleged problems with his indictment by repeating it here. Simmons cites *United States v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002), and *United States v. Lentz*, 225 F. Supp. 2d 672 (E.D. Va. 2002). In *Fell,* 217 F.Supp.2d at 483, the court found the following: "Although the *Ring* decision explicitly did not discuss whether a defendant was entitled to grand jury indictment on the facts that, if proven, would justify a sentence of death, *see Ring*, _____ U.S. at _____ n. 4, 122 S.Ct. at 2437 n. 4, the clear implication of the decision, resting as squarely as it does on *Jones*, is that in a federal capital case the Fifth Amendment right to a grand jury indictment will apply." This is not a federal capital case, and there is nothing to show that this Fifth Amendment right is applicable to a state capital case. *Lentz* makes the same finding, but once again deals with the Federal Death Penalty Act, or FDPA.

¶52. Simmons also relies on the United States Supreme Court decision of *Allen v. United States*, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 830 (2002). In a memorandum decision, the Supreme Court stated the following: "The judgment [in *Allen*] is vacated and the case is remanded to the United States Court of Appeals for the Eighth Circuit for further consideration in light of *Ring v. Arizona*, 536 U.S. _____ (2002)."

¶53. One issue raised in *Allen* was the issue Simmons raises here, that of his indictment being defective because it did not contain the aggravating factors. The Eighth Circuit in *Allen* found that Allen's indictment was not defective even though it did not contain the aggravating factors. If this is the basis on which *Allen* is being reversed, it seems odd to cite *Ring v. Arizona* to do it. The question of what an indictment must contain in a state capital case was not before the *Ring* court. In *Apprendi v. New Jersey*, the Supreme Court stated that the Fifth Amendment right to indictment had never been applied to the states through the Fourteenth Amendment. Absent more explicit direction, we find that the Supreme Court has not ruled that state capital defendants have a constitutional right to have all aggravating circumstances listed in their indictments. We find that this issue is without merit.

## X.    INSTRUCTION S-11.

¶54. On direct appeal Simmons raised as error the giving of Instruction S-11, which states:

> The Court instructs the jury that one who willfully, unlawfully, and feloniously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her hand.

¶55. This Court found the issue to be without merit as follows:

> Simmons alleges that the trial court erred in granting State's S-11 which he believes is an incorrect statement of the law. The State urges that this argument should be procedurally barred because defense counsel's objection to S-11 is different on appeal than the one offered at trial. At trial, it appears that defense counsel objected to S-11 on the grounds that it was an "aiding and abetting" instruction, rather than an incorrect statement of the law.

The State cites *Doss v. State,* 709 So.2d 369, 378 (Miss.1996) for the proposition that an objection at trial on one specific ground constitutes a waiver on all other grounds.

Simmons believes that this instruction relieved the prosecution of its burden to prove all of the elements of capital murder, robbery, kidnaping and rape. Simmons cites generally *Hornburger v. State,* 650 So.2d 510, 514 (Miss.1995) and *Berry v. State,* 728 So.2d 568 (Miss.1999).

Both *Hornburger* and *Berry* are distinguishable because they involved instructions that told the jury that each person who commits any act that is an element of the crime is guilty as a principle. S-11 simply does not contain the operative language that could be construed as reading that a defendant found guilty of aiding and abetting with respect to one element of the crime is guilty as a principle. When determining whether error lies in the granting or refusal of various instructions, we must consider all the instructions given as a whole. *Coleman v. State,* 697 So.2d 777, 782 (Miss.1997). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman,* 697 So.2d at 782. The jury instructions listing the elements of capital murder (S-4a), robbery (S-3), kidnapping (S-7), and rape (S-8) all carefully lay out the elements of each crime. Additionally, Simmons is guilty as a principal under Miss.Code Ann. §§ 97-1-3 (2000).Thus, we find no error in the giving of this instruction.

*Simmons,* 805 So.2d at 475-76.

¶56.    Simmons acknowledges this Court's consideration of S-11 on direct appeal, but states here at the post-conviction level that S-11 "causes a more serious, obscure and sinister problem, different and apart from the issue addressed on appeal - it allows the jury an option in regard to the capital murder charge of finding Simmons guilty through a minimal act not rising to the level of the actual commission of the crime." Simmons further states that "[t]he syntactical and semantic differences in the given aiding and abetting and accessory instructions which may allow for an experienced jurist to differentiate are simply confusing and prone to error when read by a lay juror." Simmons later adds that S-11, "when viewed within the evidence adduced in trial, unfairly lessened the prosecutor's burden." The State argues that Simmons is raising the same issue here that he raised on direct appeal, and as such this issue is barred from consideration by res judicata. We agree with the State's argument and hold that the issue is barred due to res judicata.

24

¶57. If Simmons is attempting to raise a new issue here, we hold that the attempt is further barred under Miss. Code Ann. § 99-39-21(1), as this issue could have been raised on direct appeal but was not, and § 99-39-21(3), which states that "the litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and prejudice."

¶58. Simmons finally argues that in the direct appeal of his co-defendant, Timothy Milano, this Court was compelled to announce that the jury instruction at issue in *Berry* and *Lester v. State,* 744 So.2d 757 (Miss. 1999), and in this case should no longer be given, and the Court prospectively adopted a Pattern Jury Instruction from the Fifth Circuit. As stated in this Court's opinion in Simmons's direct appeal, S-11 is distinguishable from the instructions found in the other cases cited here. This Court in *Milano* did not reverse based on the instruction in question, but found that any error was harmless as other instructions provided that all elements of the offenses had to be proved before Milano could be found guilty. *Milano v. State*, 790 So.2d 179, 185 (Miss. 2001). We find that this issue is without merit.

## CONCLUSION

¶59. After thorough consideration we deny Simmons's Motion for Leave to Proceed in the Trial Court on a Petition for Post-Conviction Relief, as amended and supplemented.

¶60. **MOTION FOR LEAVE TO SEEK POST- CONVICTION RELIEF, DENIED.**

**PITTMAN, C.J., WALLER, P.J., COBB, EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**