# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-DR-00912-SCT

*STEVE KNOX a/k/a STEVE MICHAEL KNOX*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/1999 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL BY: ROBERT M. RYAN LOUWLYNN VANZETTA WILLIAMS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | RONNIE HARPER |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | LEAVE TO SEEK POST-CONVICTION RELIEF DENIED - 03/24/2005 |
| MOTION FOR REHEARING FILED: | 04/21/2005; DENIED AND OPINION CLARIFIED AT ¶¶ 50, 51 & 59 - 06/02/2005 |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Steve Knox was convicted of capital murder and sentenced to death for the murder of Ella Mae Spears.  On direct appeal this Court considered three issues, found those issues to be without merit and affirmed Knox's conviction and death sentence.  *See **Knox v. State***, 805 So.2d 527 (Miss. 2002), *cert. denied*, 536 U.S. 965, 122 S.Ct. 2677, 153 L.Ed.2d 842 (2002).

¶2.    Knox subsequently filed his Petition for Post-Conviction Relief and Supplement/Amendment to Petition for Post-Conviction Relief with this Court.    The State has filed its Response, and Knox has filed his Rebuttal.    Knox raises the following contentions in his Petition for Post-Conviction Relief:

I.    THE TRIAL COURT'S LIMITING INSTRUCTIONS ON THE STATUTORY AGGRAVATOR ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL WAS NOT SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL AND FURTHER, THE INSTRUCTION WAS CONSTITUTIONALLY INFIRM IN THAT IT WAS VAGUE AND OVERBROAD.

II.    PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WITHIN THE MEANING OF *STRICKLAND v. WASHINGTON*.

III.    THE TRIAL COURT SHOULD HAVE DIRECTED A VERDICT IN FAVOR OF KNOX ON THE CHARGE OF CAPITAL MURDER AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF AND AFTER THE STATE FINALLY RESTED IN THE GUILT-INNOCENCE PHASE OF THE TRIAL AS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY TO THE UNDERLYING FELONY OF ROBBERY.

IV.    MISSISSIPPI'S DEATH PENALTY STATUTES ARE UNCONSTITUTIONAL AS APPLIED TO THE PETITIONER AND AS A RESULT, HIS EIGHTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION WERE VIOLATED.

V.    THE SENTENCE RENDERED AGAINST PETITIONER STEVE KNOX IS DISPROPORTIONATE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.

VI.    PETITIONER WAS DENIED HIS RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND MISSISSIPPI LAW DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AT HIS CAPITAL TRIAL.

2

¶3.    Knox also raises the following contentions in his Supplement/Amendment:

**VII.    THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE GUILT AND SENTENCING PHASES OF THE TRIAL WITHIN THE MEANING OF *STRICKLAND v. WASHINGTON*, AND CORRESPONDING PORTIONS OF THE MISSISSIPPI CONSTITUTION.**

**VIII.    THE AGGRAVATING FACTORS ELEVATING THE CHARGE TO A CAPITAL OFFENSE WERE NOT INCLUDED IN KNOX'S INDICTMENT AND THEREFORE HIS DEATH PENALTY MUST BE VACATED.**

**IX.    PETITIONER'S DEATH SENTENCE VIOLATES THE SIXTH AND EIGHTH AMENDMENTS AS THE JURY FOUND THE AGGRAVATING CIRCUMSTANCES IN THE DISJUNCTIVE.**

**X.    THE SENTENCING JURY WAS IMPROPERLY INSTRUCTED.**

**XI.    ADMISSION OF THE PHOTOGRAPH OF THE DECEASED TAKEN PRIOR TO HER DEATH WAS ERROR.**

**XII.    PETITIONER ASSERTS THAT HIS DEATH SENTENCE WAS DISPROPORTIONATELY IMPOSED.**

## FACTS

¶4.    On October 22, 1998, Ella Mae Spears was scheduled to travel from Liberty to Fayette, Mississippi, to babysit the children of her niece, Guy Alice Spears Green. When she failed to arrive as scheduled, her family contacted the Sheriff's Office. The authorities went to her house, where they found her body locked in the trunk of her car. Autopsy results indicated that her death was consistent with manual strangulation. Later that day Steve Knox was apprehended in the area of Ella Mae Spears's house with her missing house and car keys in his back pocket. A search of Knox's parents' home yielded a shirt and jogging pants which were stained with

3

wet, reddish brown spots. Knox could not remember how he came to be wearing bloody clothing and how the keys came to be in his back pocket. He stated that he woke up on the morning of October 22, went outside to a field, and then woke up in the field some time later with blood on his clothes and no memory of what had happened.

## DISCUSSION

### I. INSTRUCTIONS 2 AND 12.

¶5. Knox first argues that portions of Sentencing Instructions 2 and 12 were vague and overbroad. The State answers that this issue was considered and found to be without merit on direct appeal. *See Knox*, 805 So.2d at 533-35. A review of this Court's opinion shows that only Instruction 12 was considered by this Court during Knox's direct appeal. Most of the argument based on Instruction 2 is not barred by res judicata, but Knox is procedurally barred from raising here any objections to Instruction 2 at this time under Miss. Code Ann. § 99-39-21(1). This Court has stated that

> [p]rocedural bars of waiver, different theories, and res judicata and exception thereto as defined in the post-conviction relief statute are applicable in death penalty post conviction relief applications. *Cole v. State*, 666 So.2d 767, 773 (Miss. 1995). Also, although this Court need not look further after finding procedural bar, it may review the merits of the underlying claim knowing that any subsequent review will stand on the bar alone. *Blue v. State*, 674 So.2d 1184, 1191-92 (Miss. 1996).

*Brewer v. State*, 819 So.2d 1165, 1167-68 (Miss. 2000).

¶6. Knox complains about his portion of Instruction 2:

> Whether the capital offense was especially heinous, atrocious or cruel in that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, in that Steve Knox bludgeoned and choked

4

Miss Spears and stuffed her into the trunk of her car while she may have still been alive.

¶7. Knox argues first that Instruction 2 was the "functional equivalent of a directed verdict" on the heinous, atrocious or cruel issue. We disagree. Instruction 2 asks the jury to find whether the offense was heinous, atrocious or cruel in the context of acts it had already found that Knox had committed.

¶8. Knox next argues that his death sentence was based on speculation because the jury was instructed that Knox may have committed certain acts "while she may have still been alive." Though not in relation to this instruction, this Court, in discussing the circumstances of Ella Mae Spears's death on direct appeal, found that "the jury was not required to so speculate" as to whether her death was especially heinous. *Knox*, 805 So.2d at 534.

¶9. Last, Knox cites an Alabama case, *Barksdale v. State*, 788 So.2d 898 (Ala. Crim. App. 2000). Knox argues that *Barksdale* sets a higher standard for the heinous, atrocious and cruel aggravator. Whether it does or not is irrelevant, as *Barksdale* has not been adopted by this Court. This issue is without merit.

### II. and VII.  INEFFECTIVE ASSISTANCE OF COUNSEL.

¶10. Knox argues that he received ineffective assistance of counsel at trial. He raises this claim under Issue II, in his Petition for Post-Conviction Relief, and under Issue VII, in the Supplement/Amendment to Petition.

¶11. This Court described review of a claim of on ineffective assistance of counsel and the standard provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

5

"The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. **Id.** at 687, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State,* 454 So.2d 468, 477 (Miss.1984) (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Stringer,* 454 So.2d at 477 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). Defense counsel is presumed competent. *Id.*

> Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State,* 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id.* The question here is:

>> whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068.

6

> There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991).

*Davis v. State*, 743 So.2d 326, 334 (Miss.1999) (citing *Foster v. State*, 687 So.2d 1124, 1130 (Miss.1996)).

*Brown v. State*, 798 So.2d 481, 493-94 (Miss. 2001).

## A.  *Batson v. Kentucky*

¶12.    Knox's jury was comprised of three African-Americans and nine Caucasians.  The State used eleven peremptory challenges in all, eight against African-Americans on the venire. Knox's trial counsel objected based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  The circuit court required the State to provide race-neutral reasons for the peremptory strikes.   The race-neutral reasons may be summarized as follows: (1) Schneider showed a drastic reaction when the death penalty status of case was announced, rolled her eyes, became pained in her appearance, and did not raise her hand on any question pertaining to the death penalty; (2) Higgonbottham also reacted to the death penalty status announcement and was related to a woman who recently had been charged with aggravated assault but the grand jury refused to indict; (3) Jenkins was related to an unpopular constable who had problems with law enforcement during his term in office; (4) Williams had strong feelings against imposition of the death penalty; (5) McCoy or someone in his family had been charged with a crime; (6) Richardson attempted to have herself excused because of previous jury service; (7) Jones was non-responsive and wore a ponytail; (8) Williams was young and non-responsive and appeared

7

to be nodding off at times. Defense counsel responded: "I cannot dispute any of the things that Ronnie [the District Attorney] has set forth. He was pretty weak on identifying with the defendant. Other than that, how the hair fixed up, a whole lot to do with anything." The circuit court found that some of the State's reasons were a close call but accepted them and allowed the challenges to stand.

¶13. Knox argues that "the trial court clearly indicated that trial counsel could have challenged some of the prosecution's race-neutral reasons in light of *Batson*." We disagree that the circuit court's comments amounted to such an indication. Knox does not cite any of this Court's decisions construing *Batson*.

¶14. The State cites *Brown v. State*, 749 So.2d 82 (Miss. 1999), where Brown alleged that his trial counsel had been ineffective for failure to offer rebuttal argument to the State's allegedly race-neutral reasons for peremptory strikes. Brown did not say what information his trial counsel should have offered in rebuttal. Brown also argued that allegations against the jurors supplied by police was hearsay. This Court found that the State gave legitimate race-neutral reasons for the peremptory strikes and absent some showing of a different outcome had the *Batson* objections been sustained, trial counsel was not ineffective on this issue. Knox has failed to make a showing of ineffective assistance on this issue.

### B. Failure to present any defense

¶15. Knox next argues that his trial counsel "failed to present an adequate and sufficient defense" and "failed to provide any meaningful adversarial testing of the prosecution's case." Knox argues that "the non-existence defense resulted in deficient performance." Knox cites *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), as authority.

8

Knox points out that trial counsel failed to call any witnesses during the guilt phase of the trial, and presumably this sub-issue is confined only to counsel's performance in the guilt phase of the trial.

¶16.    Knox told Deputy Sheriff Donald Butler that he woke up on the morning of the murder of Ella Mae Spears, went outside to a field, and the next thing he remembered was waking up in the field several hours later with blood on his clothes and no memory of how the blood got on his clothes.    Knox now does not say how his trial counsel were supposed to fashion a defense out of this version of events.

¶17.    The State cites *Branch v. State*, 882 So.2d 36 (Miss. 2004), where this Court discussed the difference between an ineffective assistance of counsel claim under *Strickland v. Washington* and a claim under *Cronic*:

> The Supreme Court has recognized a limited exception to the prejudice requirement when (1) assistance of counsel has been denied completely, (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) counsel is denied during a critical stage of the proceedings. *Cronic*, 466 U.S. at 658-59, 104 S.Ct. 2039; see *Mickens v.Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 1240-41, 152 L.Ed.2d 291 (2002).

> *Freeman v. Graves,* 317 F.3d at 900. In this case, because the errors were committed by his own counsel, Branch argues that there was no meaningful adversarial testing of prosecutor's case. *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (discussing egregious trial conduct necessary to remove a case from *Strickland* analysis and apply a *Cronic* analysis).

> When applying *Strickland* or *Cronic,* the distinction between counsel's failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a "difference ... not of degree but of kind." [*Bell,* 122 S.Ct. at 1851 (quoting *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039)]. Under this

9

rationale, when counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. *Id.* at 1851-52. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution's case. Such strategic decisions do not result in an abandonment of counsel, as when an attorney completely fails to challenge the prosecution's case. Under the Court's reasoning, then, *Cronic* is reserved only for those extreme cases in which counsel fails to present any defense. We presume prejudice in such cases because it is as if the defendant had no representation at all. In contrast, strategic or tactical decisions are evaluated under *Strickland's* traditional two-pronged test for deficiency and prejudice.

*Haynes v. Cain,* 298 F.3d 375, 381 (5th Cir. 2002).

A defendant is not entitled to errorless counsel. *Hansen v. State,* 649 So.2d 1256, 1259 (Miss.1994), *Johnson v. State,* 511 So.2d 1333, 1339-40 (Miss.1987). This Court must look to the entire performance of counsel to determine whether he or she was competent and conscientiously fulfilled the role as advocate.

*Branch*, 882 So.2d at 65-66. This Court found that a review of the record showed that Branch was "represented by competent and zealous counsel" who "challenged the State's evidence at all stages of this case," and there was no merit to the issue. *Branch*, 882 So.2d at 66.

¶18. The State contends that Knox's trial counsel challenged the State's case and there was no violation under *Cronic*. The State points out that defense counsel filed numerous pre-trial motions; cross-examined nine out of eleven prosecution witnesses; points out a long colloquy between the circuit court and defense counsel on whether one defense witness might be located and called (the witness ultimately was not called because he would have corroborated the State's witnesses as to what happened when Knox was taken into custody); notes that Knox was thoroughly examined on whether or not he wanted to take the stand; and that the physical evidence in the case was overwhelming in favor of the State. The State attaches to its Response

an affidavit from Gus Sermos, one of Knox's trial attorneys, wherein Sermos states that he met with Knox on numerous occasions and even discussed a plea offer from the State with Knox, which Knox ultimately rejected. The terms of the plea offer are not supplied.

¶19. As Knox has not suggested any new evidence or testimony which should have been offered by his trial counsel, we find that there was no violation of Knox's right to counsel under *Cronic* or *Strickland*.

### C. Failure to Investigate and Present Mitigating Evidence Concerning Mental Health

¶20. This issue was raised in both Knox's original Petition for Post-Conviction Relief, as his sole claim for ineffective assistance, and his Supplement/Amendment to Petition for Post-Conviction Relief, under Issue C.

¶21. Knox argues that trial counsel failed to adequately investigate mitigation factors and interview potential mitigation witnesses. Knox notes that trial counsel called no witnesses during the guilt phase of his trial and only two witnesses during the sentencing phase, Knox's mother and aunt. Trial counsel also introduced copies of Knox's Social Security records during the sentencing. Knox suffered a head injury while doing construction work in 1998. Knox claimed that he suffered from headaches because of this injury. In October 1998 he applied for SSI disability due to his head injury. His application was denied.

¶22. Knox also attaches two affidavits from Deidre Jackson, a paralegal, and Tomika Harris, an investigator, both with the Mississippi Office of Capital Post Conviction Counsel. Each affidavit states that Jackson and Harris conducted a phone interview with Mildred Knox, mother of Steve Knox, on January 30, 2003. The affidavit states that Steve Knox was a slow

11

child who didn't talk much until the age of seven and that she believed he had learning disabilities, but she couldn't afford to take him to a doctor; that he wet his pants until his was ten, but medication helped that problem; that Steve would wake up on some days and complain that he could not see, and would stay in bed until his vision returned; that Steve's favorite hobby growing up was boxing; that Steve couldn't hold a job for a long period of time; and that he seemed to have mental problems but the problems worsened when Steve was struck in the head with a backhoe bucket at a construction job in North Carolina. Knox states that this information could have been presented at trial or should have led to further investigation as to mitigating evidence or even as to possible mental retardation.

¶23. Knox also states that he "had a prior history of substance abuse beginning at the age of fourteen," that he was "a heavy user of crack and occasionally marijuana," and as a result of his drug use, he "was often homeless." Knox cites no authority for these assertions.

¶24. Knox cites *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), where the United States Supreme Court found that counsel had been ineffective at the sentencing phase of trial because of counsel's failure to investigate and uncover proof of Williams's tragic childhood because counsel thought that state law barred access to certain relevant records. The Court said counsel could have discovered that Williams's parents had been imprisoned for criminal neglect of their children, that Williams had been beaten by his father, that Williams had spent time in an abusive foster home, that Williams was borderline mentally retarded and did not advance past the sixth grade in school, and that Williams had helped authorities during his stay in prison.

12

¶25. Knox also cites *Jackson v. Calderon*, 211 F.3d 1148 (9th Cir. 2000), where Jackson's attorney was found to be ineffective in the sentencing phase for spending about two hours investigating in preparation for sentencing and calling only Jackson's estranged wife and mother as witnesses. In invalidating the death sentence, the Ninth Circuit stated that Jackson's attorney never investigated beyond the mother and wife because he never expected the case to reach the sentencing phase, and he never investigated or presented evidence concerning Jackson's addiction to PCP or his PCP intoxication at the time of the murder, never investigated a separate aggravating factor, and never investigated beatings Jackson had endured as a child or signs that Jackson was mentally ill. *See also Smith v. Stewart*, 140 F.3d 1263 (9th Cir. 1998) (death sentence vacated where counsel presented no mitigating evidence when evidence concerning mental problems, drug abuse and family ties was available).

¶26. The State answers by first stating that the affidavits of the Office of Capital Post-Conviction Counsel staff contain hearsay, and when Mildred Knox purports to convey what other people have stated, they contain double hearsay. The State cites *Bishop v. State*, 882 So.2d 135, 155 nn. 11 & 12 (Miss. 2004), where this Court found that similar affidavits would not be considered in post-conviction proceedings.

¶27. The State then discusses the Social Security documents attached by Knox to his Petition, noting that the same documents were admitted as an exhibit during the sentencing phase of Knox's trial. Defense counsel was allowed to give a short explanation to the jury concerning Knox's injury and his attempt to be declared disabled by the Social Security Administration.

¶28. The State also cites the affidavit from trial counsel Gus Sermos, which states that Sermos and co-counsel Rosenthal met with Knox on numerous occasions, and trial counsel concluded that "neither Knox's sanity nor his competency to assist counsel and go forward with the case were issues in question." Sermos further states in the affidavit that he spoke to or attempted to speak to numerous members of the Knox family and the way in which he evaluated the information they gave him.

¶29. The State points out that Knox managed to hold certain menial jobs and was never declared disabled by the Social Security Administration. The State points out that Knox has supplied little or nothing as to what an effective attorney performing a proper investigation would or should have found in the way of mitigating testimony. The State argues that the accusation that trial counsel failed to properly investigate is merely an unfounded allegation. We agree with the State. This issue is without merit.

### D. Failure to determine competency to stand trial.

¶30. Knox next argues that, considering his head injury and his attempt to obtain Social Security disability benefits, trial counsel should have asked that the circuit court make a determination as to Knox's competency before trial. Knox states that failure to ask for such a determination despite the warning signs available to counsel amounts to ineffective assistance. Knox cites *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994); *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990); *Jackson v. State*, 857 S.W.2d 678 (Tex. Ct. App. 1993); and *State v. Green*, 632 So.2d 1187 (La. Ct. App. 1994). In all of these cases counsel was found to ineffective for failure to investigate competency or some other aspect of the client's mental state or failure to object when the statutory means for determining competency was not

14

followed. There was also medical evidence of mental illness, insanity, retardation and substance abuse presented in each of these cases. Knox has presented no such evidence in this case. He has not supplied an affidavit from any doctor or mental health professional which states that he is incompetent now or that he was incompetent at the time of his trial. Absent some evidence of this type, the case law cited by Knox is irrelevant.

¶31. Knox next argues that appellate counsel was ineffective for failure to raise as error on appeal the circuit court's failure to order a competency examination even where none requested. Neither Knox nor the State cite authority from this Court stating that the failure to ask for a competency hearing, by itself, amounts to ineffective assistance of counsel. Absent some substantial evidence, in addition to the medical and Social Security records already produced, which raises a legitimate question concerning Knox's competence, we find that trial counsel was not ineffective here.

### E. Failure to Investigate and Present Mitigating Evidence

¶32. This is a restatement of subsection C of this issue. Nothing presented here changes this Court's earlier finding, that Knox has failed to show ineffective assistance of counsel on the failure to investigate and find mitigating evidence, mostly in the area of mental health.

### III. EVIDENCE OF ROBBERY.

¶33. Knox argues that the circuit court erred in failing to grant a directed verdict on the capital murder charge because the evidence was insufficient to support a guilty verdict on robbery, the underlying felony. Knox cites *Register v. State*, 232 Miss. 128, 97 So.2d 919 (1957), where Register was convicted of robbery. This Court reversed Register's conviction because it was not proven that Register took the personal property of his victim

15

contemporaneously with his assault on her, or that the violence Register used against the victim was the means by which her personal property was taken. Knox argues that there was no testimony based on personal knowledge as to the alleged robbery of Ella Mae Spears or how Knox got the house key and car key in question. Knox argues that this conjecture does not amount to a robbery under Miss. Code Ann. § 97-3-19. Knox also cites *Clayton v. State*, 759 So.2d 1169 (Miss. 1999), where Clayton's robbery conviction was reversed because it was not proven that Clayton put his victim in fear of immediate injury before he snatched her purse.

¶34. The State argues that consideration of this issue is barred by res judicata, because the issue was raised on direct appeal and found to be without merit by this Court. *See* Miss. Code Ann. § 99-39-21(3); *Doss v. State*, 882 So.2d 176, 197 (Miss. 2004). A review of this Court's opinion shows this to be correct. This Court found that "the elements of robbery by theft of house and car keys, the underlying felony, was clearly established and proven beyond a reasonable doubt." *Knox*, 805 So.2d at 532. We note that Knox argued and relied upon *Register* on direct appeal. This Court also stated that, "[i]t is not necessary that the victim be deprived of property prior to death to sustain a conviction for robbery." *Id.* at 531 (citing *West v. State*, 463 So. 2d 1048, 1056 (Miss. 1985)). We also noted, "a blood trail led from a spot in her garage to the trunk of her car, with no sign of entry into her home, all of which indicates that Knox took the keys from Spear's person while she was in the garage." *Id.* at 532. We also noted that the house and car keys was "property of nominal and modest value" but, that was "of no great concern," citing *Fisher v. State*, 481 So. 2d 203 (Miss. 1985), where this Court has upheld the underlying felony of robbery where only property of nominal or modest value was

16

taken. *Id.* *See also* **People v. Gonzalez**, 254 A.D. 2d 157, 158, 681 N.Y.S.2d 3, 4 (N.Y. App. Div. 1998) (Car keys were taken and consisted of only modest or nominal value.)

¶35.    It is thus apparent to this Court, as it obviously was to the jury, that Knox killed his victim in the garage, took the house and car keys from her, drug her body and placed it in the trunk of the car.  The jury could have then concluded that Knox killed Ms. Spears and took the keys "intending to take her car and that he either failed to do so or intended to return at a later time." 805 So. 2d at 532.  This issue is without merit.

## IV.    CONSTITUTIONALITY OF DEATH PENALTY STATUTES.

¶36.    Knox next argues that Miss. Code Ann. § 97-3-19(2)(e),  § 99-19-101(5)(d) and § 99-19-101(7) are unconstitutional.    Section 97-3-19(2)(e) provides circumstances under which killing of a human being can become capital murder, i.e. murder in the commission of a felony; Section 99-19-101(5)(d) lists certain felonies as potential aggravating circumstances in a capital offense; and Section 99-19-101(7) lists the so-called **Enmund** factors.   Knox concedes that this Court has consistently held that § 97-3-19(2)(e) "passes constitutional muster."   Knox disagrees with these repeated findings.

¶37.    As to § 99-19-101(5)(d), Knox appears to argue that a person could be given the death penalty because "anyone who commits a felony during which a killing takes place has contemplated that lethal force would be used and is therefore death eligible."   Knox argues that the required level of intent would not be met here.   This is an academic argument in this case. The jury found that Knox actually killed Ella Mae Spears.   Knox also concedes that this Court has found § 99-19-101(5) to be constitutional.

¶38.    Finally, as to § 99-19-101(7), this Court has stated:

Stevens asserts that the jury instructions given during the penalty phase of his trial were constitutionally defective in light of *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Stevens argues that Miss.Code Ann. § 99-19-101(7) improperly allows the commission of a felony to be used as an aggravating factor in determination of a death sentence, thereby lowering the level of culpability required to impose a death sentence. However, even Stevens acknowledges that the death penalty may be imposed as punishment for a killing which takes place during the commission of a felony. *Stevens v. State*, 806 So.2d at 1053. Stevens also argues that the capital sentencing scheme violates the Eighth Amendment because it potentially might allow one who merely participates in a felony to receive the death sentence for a killing he had no intent to commit.

This Court has previously determined that a sentencing scheme which permits imposition of the death penalty for certain felony murders without a finding of a specific intent to kill is not violative of either the Eighth Amendment or due process protections. *Holland v. State*, 705 So.2d 307, 319-20 (Miss.1997). The Court has also held that the "during commission of a felony" aggravating factor is not unconstitutional because other statutes prevent the sentencing body from imposing a punishment that is greater than the crime. *Grayson v. State*, 806 So.2d 241, 252 (Miss.2001). These issues are without merit.

*Stevens v. State*, 867 So.2d 219, 223 (Miss. 2003).

¶39.     The State argues that Knox is procedurally barred from raising this issue because it was not raised on direct appeal.  *See* Miss. Code Ann. § 99-39-21(1).  This is correct.  In addition, a review of the merits shows that Knox is due no relief on this issue.

### V.     PROPORTIONALITY OF DEATH SENTENCE.

¶40.     Knox next argues that his death was disproportionate "when considering his relative mental state and culpability."   He also states that his sentence "violates federal case law because it ignores the mental state of the defendant and because there is no rational basis for treating a felony murderer more culpable than a depraved heart murderer."   Knox cites *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct.

18

3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L. Ed 2d 127 (1987); and *Grayson v. State*, 806 So.2d 241 (Miss. 2001).

¶41.    This Court considered the proportionality of Knox's death sentence on direct appeal and found:

> Miss.Code Ann. §99-19-105(3) (2000) requires that a proportionality review be conducted by this Court when affirming a death sentence in a capital case. It does not appear that Knox's death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. As discussed previously, the evidence supports the "heinous, atrocious, or cruel" aggravating factor. Finally, it does not appear upon comparison to other factually similar cases where the death sentence was imposed, that the sentence of death is disproportionate in this case. *See* Appendix of death penalty cases decided by this Court. Having given individualized consideration to Knox and the crimes in the present case, this Court concludes that there is nothing about Knox or his crimes that would make the death penalty excessive or disproportionate in this case. *See Doss v. State,* 709 So.2d 369 (Miss.1997) (death sentence was proportionate where defendant robbed and shot victim); *Cabello v. State*, 471 So.2d 332, 350(Miss.1985) (death sentence was proportionate where defendant strangled and robbed victim); *Evans v. State*, 422 So.2d 737, 739 (Miss.1982) (death sentence was proportionate where defendant robbed and shot victim).

*Knox*, 805 So.2d at 534.

¶42.    The State argues that consideration of the issue is barred by res judicata, as the issue was considered and found to be without merit on direct appeal.  *See* Miss. Code Ann. § 99-39-21(3); *Doss v. State*, 882 So.2d at 197.  Knox appears to be raising a new basis for the proportionality argument here, as he did not raise any proportionality argument on direct appeal; rather, it appears that this Court considered this issue on its own because of the requirement of Miss. Code Ann. § 99-19-105(3).  In this case, this argument is procedurally barred because it was not raised on direct appeal. *See* Miss. Code Ann. § 99-39-21(1).

¶43. Even if the merits of the issue were considered, this argument has been raised and rejected by this Court previously on the post-conviction level. *See Grayson v. State*, 879 So.2d 1008, 1019 (Miss. 2004). The issue is without merit.

## VI.   CUMULATIVE ERROR.

¶44. Knox next argues that he is entitled to relief based on cumulative error, though he does not name any specific issues. Considering the issues he has raised previously, along with those not yet discussed, we find no error sufficient to allow him to proceed in the trial court, cumulative or otherwise.

¶45. Knox argues that a reviewing court must also consider the cumulative effect of counsel's deficient performance. This Court did so under discussion of Issues II and VII, and found no cumulative error.

## VIII.   SUFFICIENCY OF THE INDICTMENT.

¶46. Knox next argues that his indictment was defective because the aggravating factors were not included in the indictment. He cites *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); and *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001).

¶47. The State answers that this issue was raised, considered and found to be without merit by this Court in *Simmons v. State*, 869 So.2d 995 (Miss. 2004), *Puckett v. State*, 879 So.2d 920 (Miss. 2004) and *Berry v. State*, 882 So.2d 157 (Miss. 2004). This Court found that *Ring's* holding was that juries must find aggravating factors; that in Mississippi, only juries can

20

find aggravating factors in capital cases; and that none of the cases cited by Petitioners mandated that indictments for state capital defendants include all aggravating factors. This issue is without merit.

## IX.    INSTRUCTION S-2.

¶48.    Knox argues that a portion of Sentencing Instruction 2 was improperly worded and allowed for an improper finding by the jury. Instruction 2 stated in part:

> Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
>
> 1.   Whether the capital offense was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a robbery, in that Steven Knox was attempting to rob Miss Ella Spears of her automobile when he killed her and had, in fact, taken her car keys from the premises.

¶49.    Knox argues that the jury's verdict did not establish that the jury found the existence of aggravating circumstances beyond a reasonable doubt, as some jurors could have found that a robbery occurred, others could have found that attempt to rob occurred, and still others could have found that flight after a robbery occurred.

¶50.    The State argues first that there was no objection to this instruction at trial and its submission was not raised as an error on direct appeal, and Knox is procedurally barred from raising it here for the first time. *See* Miss. Code Ann. § 99-39-21(1). The Court agrees that Knox is procedurally barred from raising this issue.

¶51.    Without relaxing the bar, the Court will consider the merits of the claim. *See **Walker v. State**,* 671 So. 2d 581, 591-93 (Miss. 1995). The State argues that Knox only quotes part of the instruction, and when Instruction 2 is read in its entirety there is no error or danger of

21

alternative findings. The part of the instruction Knox quotes is taken from Miss. Code Ann. § 99-19-101(5)(d), and is stated in the disjunctive. However, the factual portion of the instruction which follows narrows the aggravating circumstance so that the jury, in its decision on the aggravator in question, was finding only that Knox was attempting to rob Ella Mae Spears when he killed her. This issue is procedurally barred and , alternatively without merit.

## X.      INSTRUCTION S-11.

¶52.    Knox next argues that the jury was improperly instructed, citing Instruction 11, in particular the following portion:

> The Court instructs the jury that Steve Knox does not have to prove the existence of mitigating circumstances beyond a reasonable doubt. Rather, you must find a mitigating circumstance to exist if you find it to exist to a preponderance of the evidence.

Knox argues that the jury was not provided with a definition of "a preponderance of the evidence," and was therefore improperly instructed.

¶53.    The State answers, first, that this issue was not raised at trial or on direct appeal and is Knox is procedurally barred from raising it first at the post-conviction level. *See* Miss. Code Ann. § 99-39-21(1). We agree.

¶54.    Second, the State notes that Knox is quoting an instruction that he submitted. Knox argues that "the only burden of proof the jury was provided instruction for was 'beyond a reasonable doubt' which is a much more stringent standard." The State points out that Knox did not submit any definition of preponderance of the evidence in his instructions.

¶55. The State further argues that the jury was instructed that the burden of proof for mitigating circumstances was less than that for aggravating circumstances. Instruction 4 states in part:

> However, mitigating circumstances do differ from aggravating circumstances because you are not required to be convinced beyond a reasonable doubt that a mitigating circumstance exists before you must take that circumstance into account as you deliberate this case. You must consider a mitigating circumstance if you believe that there is any evidence to support it.

¶56. The State finally cites *Holland v. State*, 705 So.2d 307, 354 (Miss. 1997), where the trial court refused to instruct the jury that the burden of proof for mitigating circumstances was to a preponderance of the evidence. In *Holland*, this Court found no error. Here too, we find that this issue is without merit.

## XI. ADMISSION OF PHOTOGRAPH OF DECEASED.

¶57. The State introduced a photograph of the deceased, Ella Mae Spears, taken shortly before her death, during the testimony of her niece, Guy Alice Spears Green. Defense counsel objected on the grounds of relevance and the State's attempt to engender sympathy. The objection was overruled. Knox did not raise the admission of the photograph as an issue on direct appeal.

¶58. Knox now argues that the photograph was irrelevant and was meant only to inflame the jury. Knox cites several cases from other jurisdictions where this was found to be reversible error. Knox cites *Coleman v. State*, 218 Miss. 246, 67 So.2d 304 (1953), where Coleman killed the marshal of the Town of Doddsville while the marshal was attempting to run Coleman out of town. This Court found that the conviction of murder was improper, and the jury should have been instructed on the issue of manslaughter, as Coleman was resisting the marshal's

23

unlawful act at the time Coleman killed him. This Court further found that admission of the marshal's photograph was erroneous because of lack of relevance.

¶59. The State argues that this issue was not raised on direct appeal and is procedurally barred under Miss. Code Ann. § 99-39-21(1). We agree with the State's argument as to procedural bar. Alternatively, as to the merits of the claim, the State cites *Edwards v. State*, 737 So.2d 275 (Miss. 1999), where this Court found that photographs of two deceased victims, taken before their deaths, were admissible. The Court finds that, pursuant to *Edwards*, the issue is without merit. In conclusion, this issue is procedurally barred and alternatively, without merit. See *Brewer v. State,* 819 So. 2d at 1167-68; *Walker,* 671 So. 2d at 591-93.

### XII. PROPORTIONALITY OF DEATH SENTENCE.

¶60. Knox argues once again that his death penalty was disproportionately imposed. He states that

> [a]n adequate review necessarily requires that cases in which a life sentence has been imposed must be included in the comparison. Also, it is necessary in the comparison of defendants that more than just prior criminal records need to be examined. Failure to consider changes in capital law and the effect that those changes might have on the legitimate similarities of some of these cases is unacceptable. The way in which proportionality review is conducted must be changed, otherwise, the review is inaccurate, misleading and essentially serves no legitimate purpose.

Knox cites no case law in support of this argument. He then repeats some of the argument presented under Issue VIII, once again citing *Apprendi v. New Jersey* and *Ring v. Arizona*.

¶61. The State answers, as it did under Issue V where Knox first raised his proportionality argument, that the argument was considered by this Court on direct appeal and is barred by res

24

judicata. We agree. The State next points out that *Apprendi* and *Ring* have nothing to do with proportionality review.

¶62. The State finally argues that this Court has considered and rejected the argument that cases resulting in life sentences should be included for comparison in proportionality review. *See* ***Blue v. State***, 674 So.2d 1184, 1235 (Miss. 1996); ***Gray v. State***, 472 So.2d 409, 420 (Miss. 1985). This issue is without merit.

## CONCLUSION

¶63. After thorough consideration, we deny Steve Knox's Petition for Post-Conviction Relief, including the Supplement/Amendment.

¶64. **LEAVE TO SEEK POST-CONVICTION RELIEF DENIED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**